Gregory D. MOORE and Debra J. Moore, h/w and Richard K. Gunter and Cynthia J. Gunter, h/w, Appellants

v.

T. Scott MOORE, Sherry A. Karchner, Christopher L. Jones and Annette M. Wockenfuss, their heirs and assigns, and any and all persons having or claiming to have a right, title, interest or estate in the land herein described, Appellees

Gregory D. Moore and Debra J. Moore, h/w and Richard K. Gunter and Cynthia J. Gunter, h/w, Appellees

v.

T. Scott Moore, Sherry A. Karchner, Christopher L. Jones and Annette M. Wockenfuss, their heirs and assigns, and any and all persons having or claiming to have a right, title, interest or estate in the land herein described, Appellants.

Superior Court of Pennsylvania.

Argued Nov. 29, 2006.
Filed March 6, 2007.
Reargument Denied May 17, 2007.

Robert D. O'Connor, Lock Haven, for G. Moore, et al.

Craig P. Miller, Lock Haven, for T. Moore, et al.

BEFORE: FORD ELLIOTT, P.J., LALLY–GREEN, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this quiet title action, the respective parties cross-appeal the trial court's final decree establishing a boundary between their adjacent properties under the doctrine of consentable lines. Both parties assert that none of the evidence adduced sustains the trial court's ruling fixing the boundary line. They differ, however, on the contours of a proposed ruling and the place between their respective properties where a boundary properly might be drawn. Upon review, we conclude that the trial court's order is not supported by the evidence. Accordingly, we vacate and remand for further proceedings.

¶ 2 The parties' dispute arose in 2001 following acquisition by defendant T. Scott Moore (T.S. Moore) of a parcel of land on the western side of Township Route 410 in Pine Creek Township, Clinton County (Parcel A) designated by deed recital to

consist of 58 acres. T.S. Moore's land is adjoined, on the eastern side of Route 410, by a parcel owned by plaintiffs Gregory D. Moore and Debra J. Moore (Parcel B). Parcel B is designated by its deed recital to contain 45 acres. Unfortunately, however, both deeds precede the construction of Route 410 and describe the land they purport to convey with reference to adjoining titles long since transferred to subsequent grantees and subject to speculation. Consequently, ownership of the land cannot be conclusively determined on the basis of the two deeds.

¶ 3 Both parcels descended from a common grantor, Leora L. Moore, who had acquired them in 1954. In 1974, Leora Moore conveyed all of Parcel A to her daughter, Donna K. Baldinger, who ultimately conveyed Parcel A to T.S. Moore. Prior to conveyance, Baldinger informed T.S. Moore that the parcel did not contain the stated acreage but rather, only 27.21 acres, as shown by a survey Baldinger had obtained in 1975. Clinton County accepted the survey and taxed Baldinger on only 27.21 acres during the entire period of her ownership. T.S. Moore never commissioned a new survey of the property and left his deed recital unchanged.

¶ 4 Plaintiffs Gregory D. Moore and Debra J. Moore (the elder Moores) obtained title to Parcel B directly from Leora Moore in 1984. Although the recital of their deed specifies the acreage at only 45, a survey they obtained of the land, running from their far-eastern boundary to the eastern side of Route 410, shows that it contains 77.46 acres. During their period of ownership, the elder Moores have timbered their land and have used other portions of it for agriculture and recreation. They also allow co-plaintiffs Richard K. Gunter and Cynthia J. Gunter to maintain a trailer on the land and have entered a "gentlemen's agreement" with the Gunters

to purchase land on the eastern-most side of Parcel B. Commencing in 2001 and continuing through at least 2003, T.S. Moore laid claim to land on the eastern side of Route 410 that the elder Moores had claimed as their own and which had been included in their survey. The record does not indicate, however, that T.S. Moore ever exercised personal dominion over the land.

¶ 5 The evidence shows significant activity on the disputed land by another neighbor, Clifford Wockenfuss, who, with his wife Annette Wockenfuss, resides in the original homestead occupied by Leora Moore on a parcel of ground measured at 2.4 acres. The boundaries of that 2.4 acre parcel were first established by Leora Moore, who retained that section of the larger property for herself after she deeded Parcel A to Donna Baldinger in 1971 and Parcel B to the elder Moores in 1984. This smaller parcel fronts on Route 410, but is surrounded on the remaining sides by the land in dispute here, which ostensibly, she conveyed to the elder Moores. Beginning in 1999, Clifford Wockenfuss conducted his own investigation and concluded that the land belonged to Donna Baldinger, whom he then approached for permission to work the land, which he wished ultimately to buy. Baldinger refused to discuss the matter with him, however, and referred him to T.S. Moore. Wockenfuss asserts that T.S. Moore then granted him permission to work the land upon which he soon planted a vineyard and an orchard, and also constructed a play area and camp. Wockenfuss acknowledged that after that point he was engaged in several disputes with Greg Moore, who claimed that he and not T.S. Moore owned the land.

¶ 6 The elder Moores commenced this action by complaint in January 2003, asserting that the indefiniteness of the de-

**4** ■

scriptions in the parties' respective deeds constituted a cloud on title and that T.S. Moore's grantor, Donna K. Baldinger, had long before acquiesced to Route 410 as a consentable boundary. In February 2006, the matter proceeded to a trial before the Honorable J. Michael Williamson sitting as finder of fact. Upon consideration of testimony and documentary evidence from the opposing parties, Judge Williamson entered findings and conclusions that designated a line of trees on the eastern side of Route 410 as the boundary between Parcels A and B under the doctrine of consentable lines. Consistent with that finding, the court entered a judgment in ejectment against the elder Moores as to the land between Route 410 and the tree line. The parties concluded, however, that the evidence did not support the trial court's decision and filed the cross-appeals at issue here.

■ ¶ 7 The elder Moores raise the following questions for our consideration:

1. When faced with a boundary dispute[,] whether the trial court failed to ascertain and effectuate the intent of the parties at the time of the original subdivision?

2. Whether the trial court misapplied the law of the doctrine of establishment of boundary lines by acquiescence?

Brief for Appellants at 10 (capitalization minimized to enhance readability). Significantly, although T.S. Moore filed a notice of appeal, his brief does not offer a statement or counter-statement of the questions involved and merely argues in response to the arguments of the elder Moores. We conclude accordingly that T.S. Moore has waived any right he might have had to raise questions distinct from those argued by the elder Moores. *See* Pa.R.A.P. 2113. We shall address the par-

ties' arguments with that limitation in mind.

¶ 8 The elder Moores' questions challenge the trial court's decision in a quiet title action. Our review of such a decision is confined to determining whether the trial court's findings are supported by competent evidence and its decree in conformity with applicable law. *See Corbin v. Cowan*, 716 A.2d 614, 617 (Pa.Super.1998). We will not reverse its decree on appeal unless the court committed legal error or its findings are not supported by credible evidence. *See id.; see also Schimp v. Allaman*, 442 Pa.Super. 365, 659 A.2d 1032, 1034 (1995).

¶ 9 We commence our review with the elder Moores' second question, as its premise and the corresponding discussion in the opposing brief for T.S. Moore represent the only point of agreement between these two parties. Significantly, the parties agree that the record contains no evidence to sustain the trial court's decision that the "tree line" on the eastern side of Route 410 marks a boundary by acquiescence or "consentable line" between their respective properties. Brief for Appellants at 22; Brief for Appellees at 12. We must determine accordingly whether the parties' conclusion is correct given the law and the evidence.

■ ¶ 10 "The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania" to quiet title and discourage vexatious litigation. *Zeglin v. Gahagen*, 571 Pa. 321, 812 A.2d 558, 561 (2002); *see also Corbin*, 716 A.2d at 617. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other. *See Corbin*, 716

A.2d at 617. Since there is no evidence of a compromise in this case, the trial court based its decision upon recognition and acquiescence.

¶ 11 "Acquiescence," in the context of a dispute over real property, "denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." *Zeglin*, 812 A.2d at 562 n. 5 (quoting Edward G. Mascolo, *A Primer On Adverse Possession*, 66 CONN. B.J. 303, 312–13 (Aug. 1992)). A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. *See Zeglin*, 812 A.2d at 561. Significantly, because the finding of a consentable line depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor. *See id.* at 566. To do so, however, the claimant must show "sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest." *Id.* "[W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds." *Soderberg v. Weisel*, 455 Pa.Super. 158, 687 A.2d 839, 843 (1997) (internal citation omitted).

¶ 12 Given the holding in *Zeglin*, the evidence adduced in this case cannot sustain the trial court's determination of a boundary by acquiescence at the tree line on Parcel B, east of Route 410. Our conclusion is based not upon the geographic expanse of T.S. Moore's claim, which is itself a matter of fact, *see Corbin*, 716 A.2d at 617, but upon the absence of any indication in the record that either T.S. Moore or his predecessor, Donna K. Baldinger, occupied the disputed land for the requisite period of twenty-one years. Although the evidence establishes that T.S. Moore "allowed" Clifford Wockenfuss to make use the land to the east of Route 410 as his own, *see* Defendants' Exhibits 3, 4, 5, 6, 7, 8, 9, Wockenfuss's use is comparatively recent, none of it before 1999. Moreover, T.S. Moore's claim in and of itself appears to arise from little more than the recital of his deed that the land documented consists of "fifty-eight (58) acres more or less." This conclusion is pointedly illustrated by T.S. Moore's examination as on cross:

Q. Now, Mr. Moore, since you seem to be the, I guess, the principal Defendant in this particular case, what property are you claiming?

A. I'm claiming the deed that I have here in my hand, fifty-eight acres.

Q. And why don't you tell us where you believe the land lies?

A. Well, apparently there's twenty-seven acres on the west side and the rest of the ground would be on the east side.

Q. *And where on the east side?*

A. I'm not sure.

Q. You have no clue; do you?

A. No, I don't.

Q. In fact, it might not be on the east side.

A. Well, it would be whatever is described in this deed.

Q. But you don't know what's described in the deed; do you?

A. Not without—

Q. Having a survey done.

A. Right.

Q. And you never had a survey done.

A. No, I didn't.

N.T., 6/10/05, at 104–05.

¶ 13 The testimony of Donna K. Balding-er, T.S. Moore's aunt and, more important-ly his grantor, confirms that, notwithstand-ing the deed recital, she made no claim to land on the eastern side of Route 410, recognizing that her deed entitled her only to acreage on the western side of the road.

Q. When you received the deed to your property, did you believe you were getting property on both sides of the public road?

A. No.

Q. What did you believe you were re-ceiving?

A. I thought I was receiving forty-some acres on the opposite side of the road. . . .

N.T., 6/10/05, at 62. Having purchased the property from her mother, Leora Moore, in 1974, Baldinger learned from a survey she commissioned that her parcel consist-ed of only 27.21 acres and applied to Clin-ton County for a commensurate reduction in her taxes. N.T., 6/10/05, at 63. Not-withstanding her chagrin at having re-ceived less than the amount of acreage stated on her deed, N.T., 6/10/05, at 72, Baldinger made no claim to land on the eastern side of Route 410 at any time during the ensuing twenty-six years before she transferred the property, free of charge, to T.S. Moore in 2001. *See N.T.,* 6/10/05, at 72 ("I said, I got a deed, you know, and, yet, I don't have it. I don't have the land I'm supposed to have; and I don't want to be involved in it anymore.") *and compare with Dawson v. Coulter,* 262 Pa. 566, 106 A. 187, 188 (1919) ("[O]ne who claims title to property through another, regardless of the nature of the transfer[,]

whether by the act of the parties or the act of law, is bound by earlier acts or declara-tions of his predecessor and takes the title *cum onere.*").

¶ 14 Viewed through the lens of this quiet title action, this evidence fails to validate the trial court's decree of a con-sentable line on the eastern side of route 410 and defeats any claim that T.S. Moore might make to such land on the basis of boundary by acquiescence. Both conclu-sions are compelled as a matter of law. Baldinger's testimony reveals, without con-tradiction, that she made no claim to land on the eastern side of the roadway. Con-sequently, there exists no preceding claim of possession to which T.S. Moore might, under *Zeglin,* tack his claim. Given that his own claim of possessory right extends a mere five years, there is no cognizable basis upon which he might claim a consent-able line to the east of Route 410—either to the tree line, as the trial court decreed, or anywhere else. Accordingly, the trial court erred in decreeing a consentable line to the east of Route 410 in favor of T.S. Moore.

■ ¶ 15 Although this analysis con-firms that T.S. Moore has no claim of right to land on the eastern side of Route 410, a question remains concerning whether the elder Moores, in their quiet title action have established their right to all land between Route 410 and the far eastern border of Parcel B. The trial court found that the evidence supported their claim only to the aforementioned tree line be-cause the Gunters, who had moved their trailer to the west of the tree line onto land claimed by T.S. Moore, moved it back to its original location when faced with opposition from Clifford Wockenfuss who at that same time had begun to husband the land with the purported permission of T.S. Moore. Trial Court Opinion, 1/5/06, at 5. The court reasoned accordingly that:

The history of the movement of the Gunter trailer seems to us to be an indication that, if there were an "understanding" with respect to the boundary of the parcel acquired by Gregory Moore, that understanding was that Gregory Moore had a claim only for the land lying to the east of the tree line ... that is, east of the imaginary extension, north and south, of the eastern line of the 2.4 acre parcel containing the [Wockenfuss residence].

Trial Court Opinion, 1/5/06, at 5. We find this conclusion unsupported given that the record shows no "understanding" between the elder Moores and T.S. Moore concerning the latter's claim to land on the eastern side of Route 410. Neither party professes that any such agreement or accommodation existed.

¶ 16 The elder Moores argue, we believe correctly, that the evidence of Leora Moore's intent as the original grantor, when coupled with their own exercise of dominion over the land, establishes their claim of right to all land to the eastern edge of Route 410. Brief for Appellants at 17. *See also Dawson,* 106 A. at 188 ("[A]ll acts and declarations of the owner of land made during the continuance of his interest tending to show the character or extent of his possession or interest, or the location of boundaries, are competent evidence not only against himself but also against those who claim through or under him."). Leora Moore deeded Parcel A to Donna Baldinger in 1971 and Parcel B to the elder Moores in 1984. Significantly, it was not until this 1984 transfer that she made any attempt to delineate a separate title for Parcel C, on which she continued to live in the original homestead. We find this conduct dispositive of Leora Moore's intent as well as that of her two grantees, Baldinger and Gregory Moore, concerning the land on the eastern side of Route 410, where Parcels B and C are located. *See*

*Corbin,* 716 A.2d at 617 ("The primary function of the court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original subdivision.") (citation omitted). If Leora Moore had intended to convey land on the eastern side of Route 410 pursuant to the 1971 transaction, she would have recognized the need to preserve her own title to the parcel on which she resided, as she did when she conveyed Parcel B to Gregory Moore in 1984. The fact that she did not render a deed for Parcel C until that conveyance suggests that she did not intend to convey the surrounding land to Baldinger in 1971. Contrarily, it evinces her intent in 1984 to convey the surrounding land to the grantee in that transaction, Gregory Moore. Thereafter, the elder Moores exercised dominion over the land by, among other things, paying taxes on it, maintaining an access road over it, having it timbered, planting it, and later, disputing the activities of Clifford Wockenfuss in treating the land as his own. N.T., 11/30/05, at 30–31, 33, 34, 53–54.

¶ 17 Under substantially similar circumstances, we have held the evidence sufficient as a matter of law to establish dominion over the land which, if continued for a period of twenty-one years, may establish a boundary by consentable line. *See Schimp,* 659 A.2d at 1034–35 (concluding that claimant's evidence of having grown crops, pastured cattle, and constructed a track road over disputed land over period exceeding twenty-one years established dominion over land and boundary by consentable line). In this case, the elder Moores have held the land in question since 1984, a period that now exceeds twenty-one years. Moreover, even if we were to toll the applicable running time as of the date of commencement of this action, thereby limiting the elder Moores'

dominion to a lesser period, they would be entitled nevertheless to tack their claim to the tenancy of their grantor, Leora Moore, who had held the property since 1954. *See Zeglin,* 812 A.2d at 566. Given that the resulting period of time clearly exceeds twenty-one years, the evidence does not support the trial court's conclusion that the elder Moores failed to establish their right to quiet title by consentable line.

¶ 18 For the foregoing reasons, we reverse the order of the trial court and remand this matter for further proceedings.

¶ 19 Decree **REVERSED.** Case **RE-MANDED** to the trial court for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED.**