J-A14034-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| BERNARD A. GAYOSKI AND MICHELE GAYOSKI, HIS WIFE, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| RONALD MARK KUKOWSKI AND KAREN L. KUKOWSKI, HIS WIFE, | : | |
| | : | |
| Appellees | : | No. 1292 MDA 2014 |

Appeal from the Judgment Entered November 7, 2014
in the Court of Common Pleas of Luzerne County,
Civil Division, at No(s): 10224 of 2008

BEFORE:   BENDER, P.J.E., JENKINS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED JULY 23, 2015**

Bernard and Michele Gayoski appeal from the November 7, 2014 judgment entered against them and in favor of Ronald and Karen Kukowski in this boundary dispute case.  We affirm.

The trial court summarized the underlying facts as follows.

> The instant matter involves a property dispute between two adjoining neighbors.  The [Gayoskis] own and reside at 77 Austin Avenue, Wilkes-Barre, Pa. while the [Kukowskis] own and reside at 75 Austin Avenue, Wilkes-Barre, Pa.  The [Gayoskis'] title was purchased in 1999, some fifteen years prior to this case.  [Karen Kukowski's] parents owned their property from 1972 with transfer of title to the [Kukowskis] in 1989.

> Both properties abut a twenty (20') foot alley in the rear. The dispute involves the use of an access area to the alley along a boundary of the two adjoining parcels.

---

*Retired Senior Judge assigned to the Superior Court.

The [Kukowskis'] parents had accessed the alley along the strip of land since the purchase of the property in 1972. There correspondingly exists a narrow paved walkway traversing the boundary and ending at the alley. The parents established an oral agreement with the [Gayoskis'] predecessor in title to place a "boundary fence" partially along the property line. As [placing all of the fencing along] the boundary line as surveyed would interfere with both parties' use of the rear access[,] the fence was constructed in 1976 [partially on the property of the Gayoskis' predecessor[1]]. Said fence exists at present and was viewed by the [trial c]ourt.

Although not extending to the rear alley, the fence, if extended, distinguishes the agreed line and allows both parties access to their properties from the rear alley. In exchange, the

---

[1] We offer the following visual aid: an excerpt of a survey offered at trial (which we have modified by labeling the parties' properties and identifying in several spots the boundary line, fence, and paved area) showing the rears of the properties adjacent to the alley.



[Kukowskis'] parents allowed the [Gayoskis'] predecessor in title a portion of their front property bordering Austin Avenue.[2]

This physical arrangement has existed since the late 1970's.

The [Gayoskis] acquired their property in 1999. Until 2007 the neighbors lived peacefully and access to the rear alley continued for [the Kukowskis].

Late in 2007 the [Gayoskis] applied for a Zoning Variance before the City of Wilkes-Barre Zoning Hearing Board. The [Kukowskis] appeared at the Hearing and opposed the application and the City of Wilkes-Barre Zoning Hearing Board denied the [Gayoskis'] application. The parties hereto thence

---

[2] An excerpt of the survey noted in footnote 1 (modified to highlight the boundary line and the fence) showing the portions of the properties adjacent to Austin Avenue.



ended their neighborly co-existence and the relationship deteriorated.

Early in 2008 the [Gayoskis] began the construction of a new fence from the rear alley extending along the property boundary line. The boundary was surveyed and pinned by a registered land surveyor (Glen J. Johnson). The location of the proposed fence is the surveyed boundary line. The line shows a twenty-three (23') foot strip of land which has been open and used by the [Kukowskis] as belonging to the [Gayoskis]. The fence as to be constructed would not allow the [Kukowskis] to access the rear alley as they had since 1972 and [would deny] them access from the alley to the paved walkway.

Subsequently and as expected in these neighbor disputes, the [Kukowskis] undertook to remove the supporting posts placed by the [Gayoskis] to construct the fence. The [Gayoskis] responded with this case filing seeking the establishment of their survey boundary and the establishment of their fence and monetary damages for the [Kukowskis'] interference and removal of the fence posts.

Trial Court Opinion, 6/30/2014, at 1-2 (footnotes added).

The Kukowskis raised counterclaims seeking a declaration of their rights under the doctrine of consentable boundaries or by a prescriptive easement, and an injunction against the Gayoskis' trespass.

The parties presented their claims at a non-jury trial on November 25, 2013. The trial court permitted the parties to file supplemental proposed findings of fact and conclusions of law following their receipt of the trial transcript. On June 30, 2014, the trial court entered an order granting the Kukowskis' counterclaim for declaratory relief under the doctrine of consentable boundaries; denying the Gayoskis' request for declaratory

judgment; and awarding the Gayoskis $895 in damages from the Kukowskis for damage done to the Gayoskis' personal property.

The Gayoskis timely filed a motion for post-trial relief, seeking judgment notwithstanding the verdict (JNOV) or a new trial. The trial court denied the motion by order of July 16, 2014. The Gayoskis timely filed a notice of appeal.[3] The trial court ordered them to file a concise statement of errors complained of on appeal, and the Gayoskis timely responded with a four-page, 24-issue statement of errors. The Gayoskis have condensed their complaints to the following four issues on appeal, which we have reordered for ease of disposition:

[1.] Whether the trial court committed plain error in its finding that 23 feet of land was involved in this matter, and not the 23 inches as was determined by testimony at trial?

[2.] Whether the trial court erred in its findings regarding the doctrine of consentable boundaries and by permitting tacking?

[3.] Whether the trial court erred and abused its discretion by denying [the Gayoskis'] request for a declaratory judgment?

[4.] Whether the trial court erred in its failure to award [the Gayoskis] the attorney's fees and full measure of their damages?

Gayoskis' Brief at 3 (unnecessary capitalization and suggested answers omitted).

Our standard of review of the denial of post-trial relief is as follows:

---

[3] Judgment was subsequently entered on November 7, 2014.

- 5 -

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict. Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

**Grossi v. Travelers Pers. Ins. Co.**, 79 A.3d 1141, 1147-48 (Pa. Super. 2013) (quoting **Wilson v. Transp. Ins. Co.**, 889 A.2d 563, 568–569 (Pa. Super. 2005)).

The Gayoskis first complain that the trial court committed a clear error in making a factual finding that the strip of land at issue was 23 feet wide, arguing that the "clear, undisputed testimony" showed that the strip was 23 inches wide. Gayoskis' Brief at 12-13.

The trial court did state in one place in its opinion that the survey showed "a twenty-three (23') foot strip of land." Trial Court Opinion, 6/30/2014, at 2. However, the same opinion later refers to "the contested approximately two (2) feet strip of land." *Id.* at 3. Furthermore, the trial court found that the new boundary was established "by the long standing access walkway and the position of the 1976 fence," items which no one disputes are 23 inches, not 23 feet, from the boundary line indicated by the deeds. We are convinced that the single reference to a 23' strip of land was a mere typographical error which ultimately had no impact on the verdict or judgment.[4] Accordingly, the Gayoskis are entitled to no relief. *Accord Com., Dep't of Transp. v. Sutton*, 660 A.2d 46, 49 (Pa. 1995) (holding argument was meritless where erroneous listing of a date was immaterial).

We next consider the Gayoskis' second and third issues: whether the trial court erred in determining that the Kukowskis gained title to the land between the fence and their house, as well as to the paved area, by the doctrine of consentable boundaries rather than holding that the Gayoskis were entitled to a declaration that they owned the 23-inch strip of land in question. Gayoskis' Brief at 14-21. The Gayoskis' argument is composed of a confusing amalgamation of various doctrines of property law. *See*, *e.g.*,

---

[4] Indeed, the Gayoskis in their brief to this Court committed the same typographical error. *See* Gayoskis' Brief at 16 ("The Deed to the Kukowskis granted their house and lot, but did not convey land, a license or easement across the 23' strip of land in question.").

Gayoskis' Brief at 14-15 ("In order for the lower court to find that the Kukowskis should win lands actually deeded to the Gayoskis by way of the doctrine of consentable boundaries, the [Kukowskis] were required to establish adverse possession by actual, open, notorious, exclusive and continuous possession of the Gayoski property which is hostile and under claim of right or color of title.") (unnecessary capitalization omitted).

This Court has summarized the law regarding the doctrine of consentable boundaries as follows:

> The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania to quiet title and discourage vexatious litigation. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other. …
>
> "Acquiescence," in the context of a dispute over real property, denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user. A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. … [W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds.

***Moore v. Moore***, 921 A.2d 1, 4-5 (Pa. Super. 2007) (quotations and citations omitted). Furthermore, "because the finding of a consentable line

depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor." ***Id.*** at 5.

Here, the record contains the following evidence in support of the trial court's verdict. In 1972, Judith Kryeski and her husband bought the house at 75 Austin Avenue. N.T., 11/25/2013, at 88. At the time, Albert and Mary Newman lived at 77 Austin Avenue, and no fences separated the properties. ***Id.*** at 88-89.

In 1976, the Kryeskis got a large dog and decided to fence in their yard to keep the dog on their property. ***Id.*** at 89. However, because of the proximity of their house to the boundary line in the rear of the property, putting the fence along the surveyed boundary line would have prevented the Kryeskis from accessing the alley behind the house, which is where the garage is located and how the Kryeski children walked to school. ***Id.*** at 90-91. Further, because of the proximity of the Newmans' house to the boundary line in the front of the property, putting the fence along the surveyed line there would have interfered with the Newmans' access to their gas meter and foundation of their house. ***Id.*** at 93-94. Therefore, the Kryeskis, with the Newmans' approval, had the fence installed such that it deviated from the boundary line in the front and the rear of the properties.

From 1976 to 1989, when the Kryeskis sold their property to the Kukowskis, the Kryeskis and Newmans treated the fence as the boundary line, with each maintaining the property on their respective side. *Id.* at 95-96, 103. This understanding of the fence as the boundary line continued when the Kukowskis became owners of 75 Austin Avenue. *Id.* at 111.

When the Gayoskis purchased 77 Austin Avenue from the Newmans in 1999, the Gayoskis believed that the fence delineated the boundary line between their property and that of the Kukowskis. *Id.* at 18, 29. From 1999 to 2007, the Gayoskis and Kukowskis continued to treat the fence as the boundary line. *Id.* at 27.

Thus, the undisputed evidence showed that the owners of the respective properties treated the fence as the boundary line, and maintained the land on their side of it, continuously, for the 31 years from 1976 to 2007. Applying the doctrine of consentable boundaries quoted above to these facts, the trial court properly determined that the line of the 1976 fence became the boundary between the properties. As a result, the Gayoskis and Kukowskis each hold marketable title to the land on their respective sides of the fence line, regardless of what the deeds provide. *Moore*, 921 A.2d at 5. *See also Zeglin v. Gahagen*, A.2d 558, 561 (Pa. 2002) (quoting *Reiter v. McJunkin*, 33 A. 1012 (Pa. 1896) ("After 21 years of occupancy up to a fence on each side as a line fence, it is not material to

inquire whether the fence is on the right line or not."); ***Plauchak v. Boling***, 653 A.2d 671, 677 (Pa. Super. 1995) ("We therefore conclude that the Bolings are estopped from denying the boundary line to which their predecessors in title acquiesced for more than twenty-one years."). Accordingly, the Gayoskis' second and third issues entitle them to no relief.

The Gayoskis' final argument, that the trial court erred in failing to award them more money, is premised upon this Court having found reversible error as a result of one of their prior claims. ***See*** Gayoskis' Brief at 22 (requesting remand for entry of additional damages and attorney fees if this Court reverses all or part of the trial court's decision). Because we find no such error, remand for the award of damages or fees is unwarranted.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 7/23/2015