J-S14005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PHILLIP B. RICHARDSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MIABELLA PROPERTY HOLDINGS, | : | No. 1322 WDA 2022 |
| LLC | | |

Appeal from the Judgment Entered January 25, 2023
In the Court of Common Pleas of Fayette County
Civil Division at No(s):  No. 1841-2021CD

BEFORE:   PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED: September 22, 2023**

Appellant Phillip B. Richardson filed a complaint when he discovered people on his property in Fayette County who were constructing a gravel road, without his consent. Richardson's complaint alleged trespass, nuisance and ejectment and sought an injunction to prevent entrance onto his land. Through subsequent filings, it became clear that the neighboring property owner, MiaBella Property Holdings, LLC, believed they were building a gravel road on their own property.[1] The parties filed competing motions for preliminary injunction. The trial court dismissed Richardson's motion based on a

_____

[*] Retired Senior Judge assigned to the Superior Court.
[1] MiaBella subsequently sold its relevant property Eric Matthews, Ryan Matthews, and Chad Matthews. For ease of reference, we will refer to Appellees collectively as "MiaBella."

stipulation that the parties would not interfere with the status quo, and then held a hearing on MiaBella's motion. Ultimately, the trial court concluded the injunction request was moot and entered judgment in favor of MiaBella in the underlying property dispute.

Richardson filed this timely appeal,[2] arguing that the trial court erred in two ways. First, he contends the court wrongfully disregarded the opinion provided by his expert at trial. Second, he contends that the court erred in failing to apply the doctrine of consentable lines. After careful review, we conclude Richardson is due no relief and therefore affirm.

In a non-jury case, our standard of review is limited to determining whether competent evidence supports the trial court's findings and whether there was an error in the application of the law. **See Landis v. Wilt**, 222 A.3d 28, 34 (Pa. Super. 2019). We give the trial court's findings the same weight as a jury's verdict. **See id**. In reviewing the trial court's findings, we must view the evidence in the light most favorable to the prevailing party. **See id**.

Here, most of the factual background of this case is uncontested. Playford Road in Uledi is an undedicated road. While Playford Road meanders

_____

[2] Richardson initially appealed from the denial of post-trial motions, which are generally not appealable. **See Prime Medica Assocs. v. Valley Forge Ins. Co.**, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009). After this Court directed Richardson to address this error, judgment was entered in the trial court. We therefore have jurisdiction over this appeal and have updated the caption accordingly. **See Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 513 (Pa. Super. 1995).

through the countryside, it runs approximately north to south before taking a turn to the east. Richardson owns property that sits at the northeastern corner created by Playford Road as it turns east. MiaBella owns property directly to west of Richardson's property, across Playford Road before it turns to the east.

The primary dispute is whether MiaBella's property is bounded by Playford Road. Richardson claims his property is bounded by a line that lies on the western side of Playford Road, while MiaBella contends that the boundary line lies in the center of Playford Road. Legally, both parties concede that Richardson's deed, which does not contain explicit metes and bounds of the property, does not provide an answer to the dispute. Therefore, the essential dispute is one of the weight to be given to the extrinsic evidence presented at the hearing.

With this in mind, we review Richardson's first argument on appeal, wherein he argues that the trial court's decision "is not substantially based upon all the evidence." Appellant's Brief, at 16. We note that "the primary function of a court faced with a boundary dispute is to ascertain and effectuate the intentions of the parties[] at the time of the original subdivision." *Doman v. Brogan*, 592 A.2d 104, 109 (Pa. Super. 1991) (citation omitted). Any ambiguity regarding the intentions of the parties should be decided as a question of fact. *See id*., at 110. "The question of where a boundary line actually is located is a question for the trier of fact." *Schimp v. Allaman*, 659 A.2d 1032, 1034 (Pa. Super. 1995) (citation omitted).

At the hearing, Robert Delansky testified that he owns Del-Sky, LLC and MiaBella Property Holdings, LLC, which owned the property in question. *See* N.T., 6/22/22 at 6. Delansky explained that when he took control of the property in 2017, he ran cables along the property to lock it up. *See id*. at 6-7. The property included a driveway, small building and fishing pond that Delansky and his partners regularly utilized. *See id*. at 8. The driveway was the only access to the property and Delansky sought to improve it by putting down new gravel as the existing gravel had been overgrown with grass. *See id*. at 9-11. During the construction, Richardson approached the work crew to stop the process. *See id*. at 11. In the four years Delansky owned the property and fished in the pond, he had no interaction with Richardson until the new gravel was being laid. *See id*. at 13.

Chad Matthews testified that he and his brothers bought the property in December 2021, approximately two months after Richardson filed his initial complaint. *See id*. at 57. The brothers use the property to fish in the pond and they access the property through the gravel driveway. *See id*. Rick Matthews, the brothers' father, testified that he had been to the property in question as early as the 1970s and the same driveway existed then as does now. *See id*. at 61-2. He explained that from the main access road, facing the Matthews' property, there is only the gravel drive, and it is bordered on one side by a swamp and on the other by a six-foot ditch. *See id*. at 63. The

property is bordered on all other sides by parcels owned by other people. *See id.* at 64.

MiaBella presented the expert testimony of Joseph Elwell, a land who performed a survey of the area in question and determined that there was an overlap of Richardson's and MiaBella's property. *See id*. at 39. He opined that the proper boundary line between the two properties was within Playford Road. *See id*. at 37-38. As a result, he determined, based on his research and observations of the property, that MiaBella owned the driveway area in dispute. *See id*. at 40.

Richardson presented competing expert testimony of Terry McMillen, Sr., a land surveyor who opined that the driveway area in dispute was owned by Richardson. *See id*. at 70. McMillen never visited the property personally, but he concluded that no part of the MiaBella property abuts Playford Road. *See id*. at 72-3.

Richardson testified that on the day that the gravel was laid, he approached the work crew with the belief that they were laying gravel on his property. *See id*. at 79. He testified that there was no gravel in that area before, just grass. *See id*. at 80. Becky Dancer testified that she formerly resided at the MiaBella property. *See id*. at 105. Dancer explained that when she lived there, people commonly came on the land to fish and there was a gravel driveway from the main road up to the house, which was knocked down around 2010. *See id*. at 107. Dancer recalled that the driveway she used

when she lived there was in a different location than the driveway that was laid in 2021. *See id*. at 108. The trial court also viewed the property in person. *See id*. at 134.

Richardson first argues that, by ruling against him, the trial court implicitly disregarded the survey performed by his expert and therefore discounted the expert's methodology, amounting to error. *See* Appellant's Brief at 12-3. Richardson relies upon Pa.R.E. 702(c) for the assertion that the trial court's role is to simply determine whether an expert's methodology is generally acceptable. *See id*. at 13. Further, Richardson claims that, in making its decision, the trial court only relied on expert testimony, contradicting facts and the law. *See id*. at 15. Ultimately, Richardson argues that the trial court disregarded the history of the property, as evidenced by testimony from earlier property visitors and owners. *See id*. at 14-6. We disagree.

The trial court prepared an opinion that detailed the factual and procedural history of the case, explaining the claims made in the filings and the testimony and evidence introduced at the hearing. *See* Trial Court Opinion, 9/8/22 at 1-3. The trial court specifically weighed the evidence presented and determined that Richardson did not meet his burden:

> The record shows that [Richardson's] deed does not include any measurement of direction, distance, metes, bounds, landmarks, or monuments. At the [hearing,] both [Richardson's] expert and [MiaBella's] expert testified that [Richardson's] section of land was the last in a series of divisions of a larger tract. As such, his property is what remained after distribution of the rest.

- 6 -

… Because [Richardson's] deed does not establish these limits with clarity, a resolution of the dispute cannot look only to the language of the deed and must consider other evidence – in this case, expert testimony and evidence.

…

After careful consideration of all expert testimony and evidence presented and after viewing the access point and respective properties, this Court finds that [Richardson] has not shown by a preponderance of evidence that the boundary is as his complaint claims. This Court finds that the boundaries are as depicted in the Polestar survey, with the disputed northeastern boundary of [MiaBella's] property adjoining [Richardson's] property in the middle of Playford Road.

*Id.* at 7.

Here, the trial court made it clear that all the evidence was considered in determining the location of the boundary. The record shows a conflict between the two expert reports that the trial court resolved in its discretion as fact finder. Richardson asserts that the trial court solely relied on MiaBella's land survey. However, he fails to recount the testimony detailed above from Robert Delansky, Chad Matthews, Rick Matthews and Becky Dancer that can all, when viewed in the light most favorable to MiaBella, support the trial court's findings. *See* N.T., 6/22/22 at 9, 57, 62, 111. Jason Brooks, prior owner of the MiaBella property, also testified regarding the prior existence of the gravel driveway. *See id*. at 28-9. Our review of the record confirms that this dispute boiled down to credibility and weight determinations. And we find no error or abuse of discretion in the trial court's credibility determinations and weighing of the evidence.

In his second issue, Richardson argues that the trial court erred by not finding that the area in dispute was owned by him based on the doctrine of consentable lines. *See* Appellant's Brief at 18. Richardson argues that he and his family occupied the area in question for the statutory period of twenty-one years and therefore the trial court should have found that despite the deed and survey evidence to the contrary, the property belongs to him. *See id*. at 23.

The doctrine of consentable lines provides that parties may prove the existence of a boundary line by establishing the opposing party acquiesced to the boundary for a period of twenty-one years through either: a) dispute and subsequent compromise of the parties, or b) when one party recognizes the title of the other. *See Moore v. Moore*, 921 A.2d 1, 4 (Pa. Super. 2007). In order to find a consentable line by acquiescence a court must find that two parties have made a claim to land on either side of a line and that they have occupied the land on their side continually for 21 years. *See id*. at 5.

As in *Moore*, there is no contention that there was a dispute or compromise here. As such, Richardson was required to establish that he exercised possession of the dispute driveway area for 21 years without the lawful owner asserting his superior right to possession. *See id*.

First, we note that Richardson did not testify to his historical use of the area for a period of 21 years. Richardson testified that he did not begin to use the area for parking until after MiaBella had the gravel placed there. *See* N.T. 6/22/22 at 96-7. Further, the only evidence of record regarding acquiescence

- 8 -

to the possession of the disputed driveway area was that Richardson's mother, Terri Johnson, testified that her family never objected to people accessing the MiaBella property from Playford Road. *See id*. at 131.

In any event, the trial court found that both parties believed that they owned the disputed area, and further, that there was no evidence either party had acquiesced to a boundary line as required by the doctrine of consentable lines. *See id*. at ¶¶ 3-5. These findings are supported by the record and we can discern no error in the trial court's reasoning.

As neither of Richardson's issues on appeal merit relief, we affirm the judgment.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2023