J-S34018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARJORIE STEIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD F. GRABOWSKI AND SALLY | : | |
| L. GRABOWSKI, HUSBAND AND | : | |
| WIFE | : | No. 242 WDA 2023 |
| | : | |
| Appellants | | |

Appeal from the Judgment Entered July 13, 2023
In the Court of Common Pleas of Allegheny County
Civil Division at No:  GD-15-018110

BEFORE:  LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY STABILE, J.:                    **FILED: March 25, 2024**

Appellants, Richard F. Grabowski and Sally L. Grabowski (the "Grabowski's"), appeal from the July 13, 2023 judgment quieting title in favor of Appellee, Marjorie Stein.  We affirm.

This Court set forth the facts at length in a prior memorandum.  ***Stein v. Grabowski***, 291 A.3d 233 (table), 556 WDA 2019 (Pa. Super. June 1, 2019), unpublished memorandum at 1-3.  For purposes of the present appeal, we offer the following condensed summary.  The parties own adjacent properties on Old Washington Road in Pittsburgh, Pennsylvania.  The Grabowski's lot is immediately north of Stein's lot.  A portion of the driveway leading from Stein's house westward to Old Washington Road extends north of the legal boundary between the two properties, and has done so since the

early 1950's.  Along the north side of the driveway is a short slope leading upward toward the Grabowski's property.  The slope presumably is the result of excavating that was done to create Stein's driveway many years ago.  As per our prior memorandum, the record establishes that the parties and their predecessors in interest have for decades treated the top of that slope (the "Top of the Slope") as the boundary between their properties, with Stein and her predecessors owning the land to its south and the Grabowski's and their predecessors owning the land to its north.

A dispute arose in 2015 while Stein and her husband were mulching around some trees that the Grabowski's believed to be on their property.  On August 15, 2016, Stein filed this quiet title and ejectment action.  Her theory, pursuant to the doctrine of consentable lines,[1] was that the Top of the Slope is the boundary between the parties' properties, based on the respective

_____

[1]  The doctrine of consentable lines is as follows:

> The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania to quiet title and discourage vexatious litigation. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other.  Since there is no evidence of a compromise in this case, the trial court based its decision upon recognition and acquiescence.

*Moore v. Moore*, 921 A.2d 1, 4–5 (Pa. Super. 2007), *appeal denied*, 934 AS.2d 1278 (Pa. 2007).

owners' consent and recognition over many decades. The trial court conducted a non-jury trial on September 7 and 8, 2017. On January 17, 2018, the trial court issued a verdict in favor of Stein. The verdict specified a new legal description of Stein's property and directed that the legal description of the Grabowski's property be altered accordingly. The trial court denied the Grabowski's timely post-trial motion by order of March 19, 2018. The verdict was reduced to judgment on March 19, 2018, and the Grabowski's filed a timely appeal.

On June 12, 2019, this Court affirmed in part, vacated in part, and remanded. We affirmed the trial court insofar as it found that the evidence supported the establishment of a new legal boundary between the parties' properties at the Top of the Slope pursuant to the doctrine of consentable lines. We vacated the judgment because the new boundary granted to Stein more land than was supported by the evidence. In particular, the January 17, 2018 verdict delineated a straight boundary line, slightly to the north of the Top of the Slope, dividing the two properties. But the proven consent line follows the contours of the Top of the Slope, and the Top of the Slope does not proceed in a straight line. We therefore vacated the verdict and remanded for a new verdict providing a boundary that conforms to the evidence introduced at trial, i.e., a boundary that conforms to the contours of the Top of the Slope.

On remand, the trial court ordered the parties to submit documentation of a boundary that complies with this Court's remand instructions. On December 15, 2022, the trial court entered its verdict on remand, in which it adopted a property line that follows the course established by Stein's surveyor. That verdict was reduced to judgment on July 13, 2023. The Grabowski's have appealed, arguing that the trial court once again erred in establishing a boundary line that grants to Stein more property than is supported by the evidence.

First, we address the parties' dispute regarding the Grabowski's failure to file post-trial motions following the remand verdict. We agree with the Grabowski's that no motion was required. Our remand merely directed the trial court to enter a verdict in accordance with the evidence adduced at trial. We permitted, but did not require, additional hearings. The trial court did not conduct any. In any event, the applicable procedural rule is clear:

> (i) When an appellate court has remanded a case for further proceedings, a motion for post-trial relief relating to subsequent rulings in the trial court shall not be required unless
>
> (1) the appellate court has specified that the remand is for a complete or partial new trial, or
>
> (2) the trial court indicates in its order resolving the remand issues that a motion for post-trial relief is required pursuant to this rule.

Pa.R.C.P. No. 227.1(i). This Court did not remand for a new or partial new trial, but rather the entry of a corrected verdict. The trial court did not indicate in its verdict after remand that post-trial motions were required. Therefore,

no post-trial motion was required to preserve the argument the Grabowski's present on appeal.

We now turn to the merits.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.
>
> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

**Wyatt Inc. v. Citizens Bank of Pennsylvania**, 976 A.2d 557, 564 (Pa. Super. 2009) (**quoting Wilson v. Transp. Ins. Co.**, 889 A.2d 563, 568 (Pa. Super. 2005)).

We begin our analysis by acknowledging that the factual and legal disputes in this case were finally resolved, almost in their entirety, by the prior panel of this Court. That is, a consent line exists, and it supersedes the legal boundary between the two properties. Further, the consent line follows the contours of the Top of the Slope. The only thing that remained for the trial court to do was enter a verdict defining the Top of the Slope as the boundary between the two properties, rather than defining a straight boundary line just to the north of the Top of the Slope.

Presently in dispute is a narrow strip of land at the western end of the properties, where they abut Old Washington Road. We gather that the precise contours of the Top of the Slope are somewhat less apparent near its western end, where the properties abut Old Washington Road. The Grabowski's claim the post-remand verdict draws "an arbitrary line from the end of the [T]op of the [S]lope [westward] to Stein's mailbox." Grabowski's Post-Remand Brief, at 28. They claim this arbitrary line places the boundary too far north, and once again grants Stein more property that was warranted by the evidence introduced at trial. The Grabowski's claim that a pear tree near the end of Stein's driveway is on their property, whereas the remand verdict places the tree on Stein's property. Stein counters that the pear tree is planted beneath the Top of the Slope, and that the Grabowski's now argue, for the first time, that the consent line follows a path between the Top of the Slope and the northern edge of Stein's driveway (the Grabowski's theory at trial was that a consent line, if it existed, followed the northern edge of Stein's driveway).

To aid in its compliance with our remand instructions, the trial court requested documentation of from each party depicting a boundary that follows the contours of the Top of the Slope. The court reviewed the parties' post-remand submissions, viewed them in comparison to the evidence submitted at trial, considered this Court's prior memorandum, and explained its post-remand verdict as follows:

> There were several reasons why I had adopted the [pre-remand] line. First and foremost, Grabowski took the position

that there was no consent line except for the Stein's driveway, and he provided no contrary proposed consent line after the non-jury trial. Second, the Stein's proposed line that I had adopted attempted to follow the [Top of the Slope[2]] as closely as possible, while utilizing a straight line to avoid a boundary line that would zig zag and possibly cause more confusion for future owners.

However, in order to follow the Superior Court's direction on remand, I reviewed and compared both parties' surveys and exhibits with their respective proposed [Top of the Slope] lines in relation to the diagram the Superior Court utilized in its Memorandum Opinion on page 17.[3] I also took into consideration that the Superior Court, per footnote 5 of its opinion, relied on Stein's survey as the source of its [Top of the Slope] found on the page 17 diagram. Grabowski submitted two documents for consideration both from Gen3 Surveying, the first dated 3/5/2020 titled Plot of Exhibits and the other dated 9/20/2020 titled Plan of Proposed Line.

The Gen3 documents provide proposed lines that purportedly follow the [Top of the Slope]. I then compared them to Stein's documents, the Liadis Engineering survey dated 12/15/2015, the Survey of the Top [of the] Slope, Exhibit A1 to the Non-Jury Verdict on Remand, and the Superior Court's page 17 diagram. After reviewing them it was clear that Grabowski's Gen3 Plot of Exhibits and Stein's Survey of the Top of [the] Slope were almost identical except for a slight deviation from the mailbox to the [Top of the Slope]. **I found the Stein survey more credible and gave it more weight since it entailed an actual survey of the [Top of the Slope] whereas Grabowski's Gen 3 documents were derived from using prior diagrams and they did not go out and survey the [T]op of the [S]lope.**

A close review of the Stein slope survey reveals that the course of the [Top of the Slope] changes at least eight times

---

[2] The trial court's post-remand opinion refers to the "top of the bank." Throughout these proceedings, the parties and the court used several phrases to refer to the Top of the Slope. We have chosen one for consistency of reference.

[3] The trial court's references are to our memorandum at 556 WDA 2019, cited in the main text above.

before it merges with the original boundary line. The Gen3 Proposed Line changes course one time and amounts to a straight line which appears to be south of the [Top of the Slope] that appears in the prior Gen 3 Plot of Exhibits and the Stein slope survey.

Trial Court Opinion, 4/6/23, at 4-5 (emphasis added).

In our view, the trial court's analysis and conclusion complies with the remand instructions of our prior panel. In particular, we discern no error in the trial court's decision to give more weight to Stein's survey than to Grabowski's post-remand documents, which were not based on an on-site survey of the Top of the Slope. This is particularly important because the precise contours of the western end of the Top of the Slope, particularly at its western end, are not readily apparent from the parties' documentary trial evidence. Further, testimony from the trial, read in a light most favorable to Stein as verdict winner, supports a conclusion that the pear tree near the end of Stien's driveway falls below the Top of the Slope. In specific, Stein testified at trial that her husband planted several trees, including the pear tree, on the slope (and therefore below the top of the slope). N.T. 9/7-8/17, at 126. Finally, as the trial court noted, the Grabowski's post-remand proposed boundary fails to comply with this Court's remand instructions in that it proceeds mostly in a straight line rather than attempting to follow the precise contours of the Top of the Slope. In essence, the Grabowski's post-remand proposed boundary line commits the same error as the pre-remand boundary, except that it falls slightly too far south instead of slightly too far north. For

these reasons, we discern no error in the trial court's post-remand verdict, and we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/25/2024