687 A.2d 846

**James M. SORG Trustee of the Sorg Camp Association, Appellant,**

**v.**

**James F. CUNNINGHAM and Ivan Geci.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1996.

Filed Jan. 8, 1997.

172

Gerard R. Sorg, St. Marys, for appellant.

Bradley J. Kraus, Johnsonburg, for appellees.

Before HUDOCK, FORD ELLIOTT and HESTER, JJ.

## OPINION

HESTER, Judge:

James M. Sorg, Trustee of the Sorg Camp Association, appeals the March 6, 1996 order dismissing his exceptions to the equity court's determination that appellees, James F. Cunningham and Ivan Geci, had acquired title to a certain parcel of land. The equity court concluded that appellees had acquired title to the land both on a theory of adverse possession and on a theory of consentable boundaries. As we believe the equity court properly applied the doctrine of consentable boundary, we affirm.

In 1995, appellant instituted this action in ejectment against appellees after a 1992 survey ordered by appellant revealed that appellees had been occupying land titled in appellant's name. Appellant owns property in Jay Township, Elk County, which is next to property owned by appellees as joint owners. Appellant and appellees acquired ownership of their properties from common grantors, Anthony Dietz and Barbara Wendel Dietz. Appellees have owned the property since 1966.

The case proceeded to a nonjury trial on November 14, 1995, before the Honorable Gordon J. Daghir. The equity court issued a decree nisi on December 4, 1995, and awarded the disputed land to appellees both on a theory of adverse possession and on a theory of consentable title. The decree described by metes and bounds the property acquired by appellees. On December 14, 1995, appellant filed exceptions to the decree, but Judge Daghir lost his retention election after the motion was filed. On March 6, 1996, the Honorable Paul B. Greiner issued a final decree affirming the award of the land to appellees but altering slightly the metes and bounds description of the land. This appeal followed.

Initially, we note that

the scope of appellate review of a decree in equity is particularly limited, and that the findings of the Chancellor will not be reversed unless it appears that the Chancellor clearly committed an abuse of discretion or an error of law. Where credibility of witnesses is important to a determination, the findings of the Chancellor are entitled to particular weight because the Chancellor has the opportunity to observe their demeanor.

*DeMarchis v. D'Amico,* 432 Pa.Super. 152, 637 A.2d 1029, 1032 (1994); *accord Weir v. Estate of Ciao,* 521 Pa. 491, 556 A.2d 819, 824 (1989) (it is trial court's function to judge credibility, and its findings will not be disturbed); *Fuisz v. Fuisz,* 386 Pa.Super. 591, 563 A.2d 540 (1989) (appellate courts are bound by the trial court's determination concerning the credibility of witnesses and weight to be accorded the evidence). We can review freely conclusions of law or factual determinations that merely are derived from facts supported by the evidence. *DeMarchis v. D'Amico, supra.* Thus, we are limited to a determination of whether there was an error of law, and the trial court's conclusions will not be disturbed unless they are not supported by the evidence or unless the court clearly abused its discretion. *Hostetter v. Hoover,* 378 Pa.Super. 1, 547 A.2d 1247 (1988).

With these standards in mind, we review the evidence presented at the nonjury trial. The disputed area is approximately 2.6 acres of land. Appellant has title to the property as trustee for himself and his three siblings. He was given the property by his mother who acquired it with his father, who has since passed away, from the Dietzes in 1948. Appellant had walked the property with his father to examine the boundaries and observed the pipes marking each boundary. They were not able to locate the pipe marking the boundary on the southwest corner of their property, however, which abuts appellees' property.

Mr. Geci testified as follows. He and Mr. Cunningham, his brother-in-law, acquired their property in 1966 from Maurice Hanes who acquired his title from the Dietzes. They used the property as a camp every weekend and occasionally during the week. When they bought the land, there was a small house built of shingles and siding with no cellar. This house is located within the 2.6 acres at issue. Appellees made various improvements to the house, including installing a kitchen, a cellar, a new ceiling, a new floor, a patio, and a new roof. To dig the cellar, the house had to be placed on jacks and then lowered onto the new foundation. They also subdivided rooms and placed aluminum siding on the house.

Since appellees mixed the work with pleasure, these improvement occurred through out the 1970s. Appellant's father visited the camp once. None of the Sorg family every objected to any of these building activities on the property.

There was a lawn around the camp when appellees purchased it. Mr. Geci maintained that lawn since 1966. There is a row of pine trees separating appellees' property and appellant's property. Mr. Geci always maintained the lawn to the row of pine trees and cut the grass at least every other week. Similarly, the Sorgs "stayed in their own land" and cut their lawn to the other side of the row of pine trees. Reproduced Record ("R.R.") at 171a. Occasionally, one of the Sorg family saw appellant cutting the lawn, and no one every objected to his maintenance of the lawn to the row of pine trees.

Mr. Geci performed other activities within the acreage at issue. He cleared a large area, built a shooting shed, and stored building materials for the camp. The materials included fifty-five gallon oil barrels, carbon to burn in the cabin's stove, building material, and pipe. Appellees also had a well dug within the contested area. Finally, appellees built a smoke house within the area. They smoked meat, cheese, and sausage in the house. Even though appellant visited appellees' camp two or three times a year, he never objected to any of these activities.

Mr. Geci also testified that he asked appellant once where appellant "thought our property line was, and [appellant said], 'Well, you probably own from here to this tree line.'" *Id.* at 180a. By the tree line, appellant was referring to the row of pine trees which Mr. Geci also believed was the boundary line between the two properties. Furthermore, appellant never used any of the property over the line of pine trees and maintained his lawn up to that line of trees. Mr. Geci also indicated that there were survey pipes on either end of the row of pine trees, and he believed that the pipes marked the boundary line between the two properties.

Robert Dietz, son of the common grantor of the parties, testified. He indicated that he observed the various activities conducted by appellees over the years on the contested piece of acreage. Furthermore, appellant, during cross-examination, admitted being aware of the various buildings on the property and admitted that he knew that appellees had maintained a lawn up to the row of pine trees.

Michael Aimonetti, a professional land surveyor, testified for appellees. He looked at the four deeds which had divided the Dietz property. The first deed he examined was the Sorg deed, and the program, the user inputs bearings and distances to determine if the deed would close and the amount of acreage conveyed. The Sorg deed had poor closure. Mr Aimonetti stated, "It was error closure of one in 180 which means basically for every 180 feet of distance you go, you have a potential to be off a—potentially off one foot." R.R. at 242a–43a. The computer analysis also indicated that using the

strict bearings and distances in the deed, the deed only conveyed 22.18 acres rather than the alleged 24.5 acres which the deed indicates was conveyed.

Mr. Aimonetti also examined appellees land to locate any evidence pertaining to pipes, stakes, buildings, piles, or other evidence of ownership. There was a row of nine pine trees, two pipes next to the first pine tree, a stake next to the last tree in the line, and a stake on the road in line with the row of pines. His drawing of the property in dispute was introduced into evidence. It uses as the boundary between the two pieces of property a straight line that connects with iron pipe on the road and runs directly north of the row of pine trees.

Based on this evidence, the equity court concluded that appellees had acquired title by virtue either of adverse possession or of the doctrine of consentable lines. The court concluded that appellees had acquired title to the property by virtue of the following activities conducted thereon since 1966:

a. siding the camp;

b. constructing a new well;

c. constructing a new basement under the camp;

d. mowing the grass;

e. constructing a smoke house;

f. constructing a shooting range;

g. storing bricks;

h. storing 55–gallon barrels;

i. storing carbon pellets;

j. raking leaves and removing brush;

k. storing wood;

l. constructing a carbon-based floor for a pavilion and constructing a pavilion attached to the camp; and

m. constructing an archery range.

Trial court opinion, 12/4/95 at 3. In the decree nisi, Judge Daghir marked the boundary to the north of the pine tree, giving appellees more land. In the final decree, Judge Greiner marked the boundary just to the south of the row of pine trees, giving appellant the benefit of the doubt.

■ The doctrine of consentable lines has two compo-
nents. A party may establish that a boundary has been
agreed to after a dispute and compromise. *Niles v. Fall
Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 545 A.2d 926
(1988)(en banc). However, proof of consentable lines also can
be established by recognition and acquiescence, as follows:

Our courts have long recognized, however, that a bound-
ary line may be proved by a long-standing fence without
proof of a dispute and its settlement by a compromise. In
*Dimura v. Williams,* 446 Pa. 316, 286 A.2d 370 (1972), the
court noted:

It cannot be disputed that occupation up to a fence on
each side by a party or two parties for more than twenty-
one years, each party claiming the land on his side as his
own, gives to each an incontestable right up to the fence,
and equally whether the fence is precisely on the right
line or not. *Id.* 446 Pa. at 319, 286 A.2d at 371.

In such a situation the parties need not have specifically
consented to the location of the line. *Dimura v. Williams,
supra* [446 Pa.] at 319, 286 A.2d at 371. It must neverthe-
less appear that for the requisite twenty-one years a line
was recognized and acquiesced in as a boundary by adjoin-
ing landowners. *See Miles v. Pennsylvania Coal Co.,* 245
Pa. 94, 91 A. 211 (1914); *Reiter v. McJunkin,* 173 Pa. 82, 33
A. 1012 (1896).

*Id.,* 545 A.2d at 930. The requirement for establishing a
binding consentable boundary by recognition and acquiescence
is that each party claimed the land on his side of the line as
his own for a period of twenty-one years. *Plauchak v. Boling,*
439 Pa.Super. 156, 653 A.2d 671 (1995). A consentable bound-
ary line need not be a fence necessarily, and a boundary
established by survey is sufficient. *Niles v. Fall Creek Hunt-
ing Club, Inc., supra.*

■ The evidence herein was sufficient to support the
equity court's application of this doctrine. Both parties main-
tained their lawns to the row of pine trees, and appellees
conducted significant activities, as enumerated by the equity
court, within that acreage. Appellees and appellant, or his

parents, treated the row of pine trees as the boundary since 1966, well in excess of the statutory period.

 Appellant's main arguments on appeal are that appellees did not conduct activities on the entire 2.6 acres conveyed to them by the court and also that appellees did not establish the boundary by clear and concise evidence. As to the first argument, there is no requirement that activities be conducted on the entire property in order for a party to prevail under the doctrine of consentable property line. *Schimp v. Allaman*, 442 Pa.Super. 365, 659 A.2d 1032 (1995). Herein, appellant treated the row of pine trees as the edge of his property and observed appellees' significant activities to their side of the row of pines. He acquiesced in the row of pines being treated as the boundary line, and the stake in line with the row of pines supports the equity court's determination that the pine row was treated as the boundary between the two camps. Appellant admitted to Mr. Geci that he thought the row of pine trees marked the boundary between the two properties.

 The second argument relates to the fact that the row of pine trees ends, and the equity court extended the consentable boundary, in accordance with the Aimonetti drawing, down to the stake in the road. In this respect, appellant notes that there was no activity on a portion of the land west of the cultivated lawn. We disagree that the evidence was insufficient to support this extension. Mr. Aimonetti testified that there was an old survey stake located at the edge of the road and in line with the row of pine trees, which also had old survey pipes next to it.

The equity court merely extended the boundary line in a straight line from the row of pines, as indicated by the old survey markings. Furthermore, Mr. Aimonetti testified that the land description in appellant's deed did not close and actually conveyed over two acres less than the deed purported to convey. The equity court, as did the parties, did nothing more than use the pine trees as a boundary marker and extend the boundary, in a straight line, down to the road.

Contrary to appellant's contention on appeal, Mr. Geci clearly testified that he and the Sorgs had treated the row of pine trees as the boundary between their properties in excess of the twenty-one year period. In the final decree, the equity court used the survey map prepared by Mr. Aimonetti, as admitted by appellant on page twenty eight of his brief. The court gave appellant the benefit of the doubt and allowed him the land to the north of the row of pines. Our review of the Aimonetti survey indicates that for the boundary between the two properties, the survey utilizes as a boundary the row of pines and the stake marker in line on the road. This boundary accords with the boundary acknowledged by the parties as the boundary between their properties. Thus, the legal description of the land is sufficient and supported by the evidence.[1]

The fact that appellees did not conduct activities on a small portion of the acreage to the west of where they stored building material is not relevant. The doctrine of consentable boundary is distinct from the doctrine of adverse possession and does not require proof of actual possession of the entire parcel of land claimed by the doctrine of consentable boundary. *Schimp v. Allaman, supra.*

As the evidence supports the equity court's determination that the parties acquiesced and recognized the row of pine trees as the boundary to their properties, we affirm.

Order affirmed.

---

1. Appellant also suggests, in a one-paragraph argument on page twenty-nine of his brief, that appellees were not permitted to prevail upon a theory of consentable boundaries in that they never pled that theory in their answer and did not request the right to amend their pleadings. However, appellant fails to develop this argument by citation of a single case on the subject. Hence, we will not consider the merits of the claim. *Fielding v. Fielding,* 454 Pa.Super. 261, 685 A.2d 178 (1996) (where appellant failed to cite to any statutory or case authority to support a one-page argument, the claim was not considered).