J-A08023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JACQUELINE M. DEMARCO AND BRAD DEMARCO, WIFE AND HUSBAND | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| THOMAS ACKER AND SABINA ACKER, HUSBAND AND WIFE | : : : | No. 2693 EDA 2017 |
| Appellants | : | |

Appeal from the Order Entered August 7, 2017
In the Court of Common Pleas of Carbon County Civil Division at No(s):
15-2312

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 27, 2018**

Thomas Acker and Sabina Acker (the Ackers) appeal from the order, entered in the Court of Common Pleas of Carbon County, entering a verdict in favor of Plaintiffs Jacqueline M. DeMarco and Brad DeMarco (the DeMarcos) in this quiet title action.  After our review, we affirm.

On September 1, 2015, the DeMarcos filed a complaint asserting possession of a 3' x 50' section of real estate between the parties' property, alleging adverse possession/consentable boundary.  At a non-jury trial, the Honorable Steven R. Serfass presiding, Jacqueline DeMarco testified that in 1975, her father built a fence on the Ackers' property along a hedgerow, which already existed on the property.  She also testified that her father installed a pool on the Ackers' property in 1974, and constructed a pool deck in 1984 or

_____

\*   Retired Senior Judge assigned to the Superior Court.

1985. Thirty years later, in June of 2015, Thomas Acker cut and removed a section of the DeMarcos' fence and pool deck because he believed it was encroaching on his property. This destabilized the remainder of the pool deck, causing the deck to partially fall into the pool and thus making the pool unusable. This quiet title action ensued.

On May 16, 2017, the court issued a decision and verdict, awarding possession of the property to the DeMarcos.[1] The court also found in favor of the DeMarcos on the Ackers' counterclaim in ejectment. *See* Pa.R.C.P. 1061.[2] Post-trial motions were filed and denied, and the Ackers filed this appeal. In response to the trial court's order, the Ackers filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[3]

---

[1] We note that Robert T. Yurchak, Esquire, who represented the DeMarcos in this case, filed a motion to withdraw as counsel of record on January 9, 2018. On March 2, 2018, he filed a praecipe to withdraw that motion. Despite Attorney Yurchak's praecipe to withdraw his motion to withdraw as counsel, the appellate brief he filed on behalf of the DeMarcos is of little use to this Court.

[2] Rule 1061 provides: "Except as otherwise provided in this chapter, the procedure in the action to quiet title from the commencement to the entry of judgment shall be in accordance with the rules relation to a civil action." Pa.R.C.P. 1061(a). The action may be brought "(1) to compel an adverse party to commence an action of ejectment[.]" Pa.R.C.P. 1061(b).

[3] The Ackers' Rule 1925(b) concise statement of errors complained of on appeal is not concise; it is eight pages long. We also note that the trial court's Rule 1925(a) opinion relies on its May 16, 2017 findings of fact and opinion in support of its verdict.

The Ackers raise one issue for our review: "Whether the doctrine of `acquiescence,' also called `consentable lines,' is also based on the 21-year statute of limitations." Pa.R.A.P. 1925(b) Statement, 9/15/17.[4] The Ackers argue that the DeMarcos failed to prove consentable lines (or boundary by acquiescence) because there "was no evidence that [the Ackers] or their predecessor in title (1) `acquiesced' to the encroachment of the swimming pool which [the DeMarcos] espouse [sic] and (2) no finding by the court that their neighbors ever accepted or acquiesced [to] [the DeMarcos'] proposed line." Brief of Appellant, at p. 25.

The scope of appellate review of a decree in equity is particularly limited; the court's findings will not be reversed absent a clear abuse of discretion or error of law. **Sorg v. Cunningham**, 687 A.2d 846, 847 (Pa. Super. 1997). Further, where a determination turns on credibility of witnesses, the court's findings are entitled to particular weight because the court has the opportunity to observe their demeanor. **Id.**

The doctrine of consentable lines has its doctrinal roots in adverse possession theory, as "occupancy with open manifestations of ownership throughout the statutory period will generally satisfy the traditional elements of adverse possession." **Zeglin v. Gahagen**, 812 A.2d 558, 562 (Pa. 2002).

---

[4] In their appellate brief, the Ackers raise a second issue, whether "hostile possession" is an element of the doctrine of "consentable lines." Brief of Appellant, at 22. That issue, however, is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provision of this paragraph (b)(4) are waived.").

In ***Moore v. Moore***, 921 A.2d 1 (Pa. Super. 2007), this Court described the doctrine of consentable lines in detail:

> The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania to quiet title and discourage vexatious litigation. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other. "Acquiescence," in the context of a dispute over real property, denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user. A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. Significantly, because the finding of a consentable line depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor. To do so, however, the claimant must show sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest. [W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds.

***Id.*** at 5 (quotations and citations omitted). Furthermore, Black's Law Dictionary defines acquiescence as follows. "A person's tacit or passive acceptance; implied consent to an act." Black's Law Dictionary, at 25 (8th ed. 2004).

"[A]cquiescence in the context of disputed boundaries denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." *Zeglin*, *supra* at 562 n. 5. Because the DeMarcos and the prior owners' use and maintenance was visible and in excess of the statutory period, it constitutes consent on the part of the Ackers. *Moore*, *supra*. The Ackers presented no credible evidence that they, or their predecessors in title, attempted to eject or license the DeMarcos from the disputed parcel at any time after the fence was erected in 1975. The court determined, therefore, that title to the disputed property vested in the DeMarcos.

After our review of the DeMarcos' brief, the record, and the relevant law, we conclude that the trial court's findings are supported by competent evidence of record, and we find no clear abuse of discretion or error of law. *Sorg*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/18