J-A25020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| GOOD WILL HUNTING CLUB | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES R. SHIPMAN | : | |
| | : | |
| Appellant | : | No. 2057 MDA 2018 |

Appeal from the Judgment Entered January 29, 2019
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  16-0819

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED FEBRUARY 18, 2020**

James R. Shipman appeals from the judgment entered in this quiet title action establishing a boundary line between the properties owned by Shipman and Good Will Hunting Club ("Good Will"). Shipman argues the court erred in excluding certain evidence, in crediting the report of Good Will's expert surveyor, and in concluding a boundary was established under the doctrine of consentable line. We affirm.

Good Will acquired 300 acres of wooded land in 1949. Opinion and Verdict, 6/13/18, at 1. Shipman acquired an adjoining parcel of wooded land to the southwest of Good Will's property in 1984. *Id.* at 1-2. Since the 1960s, members of Good Will have marked what they believe to be the boundary between the two properties by attaching "No Trespassing" or "Posted" signs to trees in a line facing Shipman's property (the "poster line"). *Id.* at 3-4. Good Will members placed the signs 30 to 100 feet apart, approximately eight

to ten feet from the line, along the entire line. *Id.* at 4. The prior owners of Shipman's property marked the same line using similar signs, often on the same trees, facing the other direction. *Id.* at 4. After Shipman acquired the property in 1984, and until 2012, he placed the same signs in the same places. *Id.*

Good Will constructed a road adjacent to the northeast side of the poster line in the 1970's and extended it in the 1980's. *Id.* at 4. Good Will has used the road continuously since it was constructed. *Id.* Since the 1990's, Good Will has paid Shipman to do work on a portion of the road. *Id.* at 5. Sometime after acquiring his property, Shipman constructed a road adjacent to the southwest side of the poster line, which he has since used continuously. *Id.* Good Will constructed two tree stands on the northeast side of the boundary, and Shipman constructed three tree stands on the southwest side. *Id.*

In 2012, Shipman constructed an oil well on the southwest side of the poster line. *Id.* He then began removing the posters, placed a barricade across the road that Good Will constructed, and placed a "No Trespassing" sign in the middle the road. *Id.*

Good Will brought an action to quiet title to determine the boundary line between the two parcels. Prior to trial, Good Will filed a Motion *in Limine* to preclude Shipman from introducing evidence related to a settlement offer. Good Will asserted that in 2012, after Shipman blockaded its road, it retained the services of Michael Maneval, a professional land surveyor, who initiated discussions with Shipman's counsel in an attempt to resolve the dispute.

Motion *in Limine*, 8/3/17, at ¶ 2-3. Good Will sent Shipman a letter in January 2013, claiming Good Will owned and/or utilized two roads that Shipman had blockaded, and offered to enter into a mutual boundary agreement in exchange for a written right-of-way to use one of the roads. ***Id.*** at Ex. 1, 1-2. In August 2013, Good Will sent another letter to Shipman, along with a drawing by Maneval showing a proposed boundary line. ***Id.*** at ¶ 6-7. In the letter, Good Will proposed the parties adopt the boundary line shown in Maneval's drawing, as it was "in the interests of both parties" to establish "a clear boundary line between their respective parcels," and to "prevent any litigation regarding the rightful owner of the area in proximity to the boundary line." ***Id.*** at ¶ 7; ***Id.*** at Ex. 2.

Good Will asserted that because it had hired Maneval in order to secure a settlement, the drawing showing his proposed boundary line and testimony related to his proposed boundary line should be excluded under Pa.R.E. 408(a). ***Id.*** at ¶ 13-15. Good Will requested the court enter an order prohibiting Shipman from introducing Maneval's drawing, Maneval's testimony, and any testimony concerning Maneval's opinions. ***Id.*** at ¶ 25.

Shipman did not file a written response to the Motion. The court held argument on the Motion, but there is no transcript of the hearing in the certified record. Following the hearing, the court granted the Motion. Its order stated, "The motion is GRANTED. The drawing prepared by Mr. Maneval is

clearly an offer to settle and thus precluded by Pa.R.E. 408(a)." **See** Order, 10/9/17.[1]

The court held a three-day bench trial. Good Will's expert surveyor, Richard Trowbridge, and Shipman's expert surveyor, Daniel Vassallo, each testified. Opinion and Verdict at 2. The court also considered Warrant 1672, an 1860 deed, a 1901 survey, a 1915 deed, a 1923 deed, a 1924 deed, a 1989 survey, and a 2006 survey. **Id.** at 2-3. The court heard additional testimony from Good Will's president and two other club members; Shipman; and three former guests of Shipman's.

Good Will argued that the boundary, as established by Trowbridge's survey, was to the southwest of the poster line. Opinion and Verdict at 6. Goodwill alternatively argued that the boundary was the poster line, under the doctrine of "consentable line." **Id.** Shipman argued that the boundary, as established by Vassallo's survey, was to the northeast of both the poster line and the adjacent road Good Will had constructed. **Id.** at 11 n.8. Shipman disagreed that a consentable line had been established by the poster line.

The court found Good Will's expert surveyor had determined the proper placement of the boundary line as set forth in the deeds. Opinion and Verdict at 6-8. However, the court also found the parties had acquiesced to the boundary being the poster line for at least 21 years, and thus the poster line constituted the boundary under the doctrine of consentable line. **Id.** at 11-13.

_____

[1] The order is dated October 5, 2017, but was filed on October 9.

The court held that this latter boundary takes precedence, and declared the poster line to be the boundary between the two properties. *Id.* at 13-14.

Shipman filed motions for post-trial relief. The court denied the motions.[2] Shipman appealed,[3] and raises the following:

> I. Was it reversible error to disallow [Shipman]'s presentation at trial of the opinion of [Good Will]'s prior surveyor[,] Mr. Maneval?
>
> II. Was it reversible error to declare that a "Consentable Boundary" had been established?
>
> III. Was it reversible error for the [c]ourt to rely on [a] purported survey of [Shipman]'s property to determine [Good Will]'s boundary[,] and was it error when doing so to prefer an angle correction over a foot measure correction, and to consider and rely on "monuments" that were not, however, referenced in any deed and whose origin was unknown?

Shipman's Br. at vi (reordered, suggested answers omitted).

## I. Motion *in Limine*

Shipman argues that the court erred in excluding Maneval as a trial witness. Shipman's Br. at 8. Shipman alleges that Maneval had been Good Will's surveyor since 1995, prior to the instant dispute between the parties. *Id.* According to Shipman, the January 2013 letter shows that the parties were disputing Good Will's use of the road at that time, not the boundary line, and

---

[2] The court held a hearing on the post-trial motions. The transcript is not in the certified record.

[3] Shipman prematurely appealed from the order denying post-trial relief. The trial court has since entered judgment on the docket. Thus, Shipman's appeal has been perfected, and we have amended the caption accordingly. *See* Pa.R.A.P. 905(a)(5).

the letter proposes he give Good Will a written right-of-way to use the road, proving that Good Will acknowledged his ownership of the road. *Id.* at 9. Shipman asserts that Good Will did not claim to own the road until 2016. *Id.* Shipman proposes that Maneval's 2013 drawing predated the instant action, and the exclusion of Maneval's expert testimony relating to the ownership of the land surrounding the road was extremely prejudicial.[4]

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court[.]" *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa.Super. 2014) (*en banc*) (quoting *Keystone Dedicated Logistics, LLC v. JGB Enters., Inc.*, 77 A.3d 1, 11 (Pa.Super. 2013)). We therefore review the grant or denial of a motion *in limine* for an abuse of discretion. *Id.* "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* (quoting *Keystone*, 77 A.3d at 11).

Rule 408(a) of the Pennsylvania Rules of Evidence states that evidence of "offering . . . a valuable consideration in . . . attempting to compromise [a]

---

[4] Shipman also argues the court erred in concluding, when deciding Shipman's post-trial motion on this issue, that Shipman had waived the issue of admission of Maneval's direct testimony by failing to attempt to introduce him as a witness at trial. However, given that Good Will's Motion *in Limine* requested the exclusion of Maneval's testimony in addition to the drawing, and given that the pre-trial order of the court stated the Motion *in Limine* was granted and did not expressly limit itself to excluding Maneval's drawing, we conclude that the court excluded Maneval's direct testimony prior to trial, and Shipman did not waive the issue by failing to re-raise it during trial.

claim" is not admissible "either to prove or disprove the validity . . . of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Pa.R.E. 408(a)(1). Here, both of the letters Good Will sent to Shipman in 2013, which were attached as exhibits to Good Will's Motion *in Limine*, propose a compromise in determining ownership of the area surrounding the poster line and use of the adjacent roads. These are subjects at issue in the instant action, which arose from a dispute that began in 2012. Good Will sent these letters, along with Maneval's drawing, as an attempt to settle the dispute and avoid litigation. Rule 408 clearly excludes this evidence.[5]

Although Shipman alleges that Maneval acted as surveyor for Good Will prior to this dispute, Shipman has failed to establish that any testimony by Maneval or regarding his opinions would have been unrelated to a settlement offer. In fact, as Shipman did not file a written response to the Motion *in Limine*, and the transcript of the hearing on the Motion is not in the certified record, Shipman has waived any argument that Maneval's testimony would have been unrelated to a settlement offer. We therefore conclude the court did not abuse its discretion in disallowing the drawing and related testimony.[6]

_____

[5] Shipman's citation to **Rafter v. Raymark Indus., Inc.**, 632 A.2d 897 (Pa. Super. 1993), affords him no relief, as **Rafter** did not involve the exclusion of testimony related to a pre-trial offer to settle, and is thus inapposite.

[6] We note that given our disposition on Shipman's second issue, the court's exclusion of Maneval's testimony likely had no bearing on the outcome of the case.

## II. Consentable Line

Shipman next argues the court erred in finding the poster line was the boundary under the doctrine of consentable line. Shipmans' Br. at 18-20.

We review a trial court's decision in a quiet title action to determine "whether the trial court's findings are supported by competent evidence and its decree in conformity with applicable law." *Moore v. Moore*, 921 A.2d 1, 4 (Pa.Super. 2007). Where the trial court sits as fact-finder in determining the placement of a boundary line, "we will not reverse on appeal unless the court's findings are not supported by credible evidence." *Schimp v. Allaman*, 659 A.2d 1032, 1034 (Pa.Super. 1995). The trial court is the "sole assessor of credibility," and "may believe all, part or none of the evidence presented." *Id.*

Under the doctrine of consentable line, a boundary may be established either by (1) "dispute and compromise between the parties," or (2) "recognition and acquiescence by one party of the right and title of the other." *Moore*, 921 A.2d at 4. The second of these, recognition and acquiescence, is proven where "each party has claimed the land on his side of the line as his own" and has "occupied the land on his side of the line for a continuous period of 21 years." *Id.* at 5. This doctrine "'has long been recognized in Pennsylvania' to quiet title and discourage vexatious litigation." *Id.* at 4 (quoting *Zeglin v. Gahagen*, 812 A.2d 558, 561 (Pa. 2002)). Once established, a consentable line takes precedence over a boundary line specified by deed. *Id.* at 5.

Here, the trial court relied on the following evidence in finding that both parties recognized and acquiesced to the boundary established by the posters for a period exceeding 21 years: the testimony of members of Good Will that they considered the poster line the property's boundary, and that they respected that boundary by hunting, riding four-wheelers, and constructing tree stands on their side of the line; the testimony of Shipman's guest, who testified that he stayed on Shipman's side of the poster line when hunting; testimony that Shipman placed tree stands and constructed a road adjacent to the poster line on his side of the line; and testimony that Good Will constructed a road adjacent to the poster line on its side of the line, and paid Shipman to perform work on it. Opinion and Verdict at 11. The court found Shipman's testimony to the contrary to be incredible. *Id.* at 12. The facts upon which the trial court relied is supported by competent record evidence, and we defer to the trial court's credibility determinations as fact-finder. *Moore*, 921 A.2d at 4; *Schimp*, 659 A.2d at 1034.

Furthermore, we find no merit to Shipman's attempts to attack the legal conclusions drawn by the trial court. First, Shipman argues the doctrine of consentable line only applies where there is evidence of "active occupation" up to the boundary line. Shipman's Br. at 18. Shipman claims that here, the posters were placed in "an area along a ridge on large unpopulated tracts," where there was no evidence of occupation. *Id.* at 18, 20.

Although the boundary ran through wooded land, there was evidence that each party actively occupied the territory up to the poster line.

"Occupation" in this context does not require "that activities be conducted on the entire property[.]" ***Sorg v. Cunningham***, 687 A.2d 846, 849, 850 (Pa.Super. 1997). Nor does "occupation" require exclusive possession. ***Schimp***, 659 A.2d at 1034. Occupation can be proven by such use as maintaining the land or constructing an access road. ***See, e.g., Moore***, 921 A.2d at 7 (concluding evidence sufficient to prove party established dominion over disputed land by "paying taxes on it, maintaining an access road over it, having it timbered, planting it, and later, disputing the activities of [another] in treating the land as his own"); ***Schimp***, 659 A.2d at 1034–35 (finding party occupied its side of consentable line by growing crops, pasturing cattle, and constructing track road). Here, the parties each constructed adjacent roads, constructed tree stands, and engaged in hunting and other activities only on their respective sides of the line. Thus, they occupied the land up to the line.

Second, Shipman argues the doctrine of consentable line only applies where there is "active dispute or mutual uncertainty[,] coupled with a desire to mutually resolve, permanently, that uncertainty." Shipman's Br. at 18. Shipman argues there was no evidence of 21 years of an active disagreement over the boundary line, as the dispute did not arise until 2012. ***Id.*** at 18, 20.

Shipman's assertion that a consentable line can only be established in the face of a 21-year dispute is not founded in the law. Rather, a consentable line can be established through 21 years of recognition and acquiescence. ***Moore***, 921 A.2d at 4. "Acquiescence" in this context "denotes passive conduct on the part of the lawful owner" and a failure "to assert his paramount

rights or interests" against another's use of his property. ***Id.*** at 5 (quoting ***Zeglin***, 812 A.2d at 562 n.5). The parties need not have disagreed and then either specifically consented or expressly agreed to the location of the line. ***Plauchak v. Boling***, 653 A.2d 671, 676 (Pa.Super. 1995); ***Niles v. Fall Creek Hunting Club, Inc.***, 545 A.2d 926, 931 (Pa.Super. 1988) (*en banc*). In fact, a consentable line may be established where the parties simply mistake the actual location of the property line. ***Zeglin***, 812 A.2d at 562; ***Niles***, 545 A.2d at 931. Here, despite no express agreement that the poster line constituted the boundary, the actions of the parties over a 21-year period indicated their recognition of and acquiescence to utilizing the poster line as the boundary.

Finally, Shipman argues that the "No Trespassing" signs were insufficient to give rise to a consentable line. ***Id.*** at 18. Shipman argues that the signs were not placed in a straight line, but were placed along "a long-existing footpath that ran along the upper edge of a ridge." ***Id.*** at 18, 20. Shipman argues the posters were conveniently placed along the footpath as a "general direction to avoid trespass." ***Id.*** at 20. He states the actual boundary was on the eastern side of the footpath, "along the side of the steep ridge, and so it only made sense to notify hunters or other guests on the footpath that further down, behind the signs, lay [Good Will's] land[.]" ***Id.*** at 18-19. Shipman points out that two of Good Will's witnesses testified that some of Shipman's posters were well within the woods on the eastern side of the boundary line, and that Good Will's president testified that the posters

"sometimes don't actually reflect where the boundary line is." *Id.* at 19 (citing N.T., 2/14/18, at 117, 118).

Although the line here was marked only by posters, a consentable line to which the parties acquiesce need not be marked by a fence or other structure. Nor need any markings extend the entire length of the line. *See, e.g., Sorg* at 848-50 (consentable line established by neighbors' maintenance of area up to row of pine trees, even though pine trees did not extend over entire consentable line); *Plauchak*, 653 A.2d at 673, 676-77 (consentable line established by neighbors' maintaining yards and constructing structures on respective sides of hedgerow); *Niles*, 545 A.2d at 927-28, 931 (finding jury could have found consentable line established in "undeveloped timberland" through evidence that trees along the line had been blazed and painted, strung with a wire that was broken in places, and posted with "no trespassing" signs). Regardless of Shipman's beliefs about where the property line should lie, and the reasons for the poster line and its location, the parties observed the line marked by the posters for a period exceeding 21 years, and thus a new boundary was established.

We find the court did not err in concluding the poster line constituted the boundary between the properties under the doctrine of consentable line. We therefore need not reach Shipman's third issue, attacking the boundary established by Good Will's surveyor. *Moore*, 921 A.2d at 5.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/18/2020