J-A03010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARJORIE STEIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD F. GRABOWSKI AND SALLY | : | |
| L. GRABOWSKI, HUSBAND AND | : | |
| WIFE | : | |
| | : | |
| Appellants | : | No. 556 WDA 2018 |

Appeal from the Judgment Entered March 23, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  G.D. 15-018110

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER,* J.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 12, 2019**

Richard F. Grabowski and Sally L. Grabowski ("Grabowskis," collectively)

appeal from the judgment entered against them and in favor of Marjorie Stein

following a non-jury trial in this quiet title action.[1]  We vacate the judgment

and remand for proceedings consistent with this memorandum.

The trial court offered the following summary of the facts of the case.

This case primarily concerns a disputed area of land located
between two adjacent, properties and the conduct of their

_____

[1] Although the Grabowskis purport to appeal from the March 19, 2018 order
that denied their motion for post-trial relief, the appeal properly lies from the
subsequent entry of judgment on the trial court's verdict.  **See**, **e.g.**, **U.S.
Bank, N.A. v. Pautenis**, 118 A.3d 386, 388 n.2 (Pa.Super. 2015) (providing
appeal to Superior Court can only lie from judgment entered after the trial
court's disposition of any post-verdict motions, not from the order denying
post-trial motions).  We have amended the caption accordingly.

*   Retired Senior Judge assigned to the Superior Court.

predecessors in title with respect to that disputed land. Stein is the current owner of the property at 2521 Old Washington Road, Pittsburgh, Pennsylvania 15241 (the "Stein property"). The Grabowskis are the current owners of the property at 2511 Old Washington Road, Pittsburgh, Pennsylvania 15241 (the "Grabowski property"). These properties are adjacent to one another with the Grabowski property situated north of the Stein Property.[2]

Stein's parents, Frank and Florence Dolanch, purchased the Stein property and constructed a house on it in 1951. Stein was raised on the Stein property and left briefly when she was married in 1967. Stein's mother conveyed the Stein property to her in 1995. In 2000, Stein's daughter occupied the Stein property when Stein's mother went into a nursing home. Stein's daughter lived in and maintained the property until 2003, at which time Stein moved back onto the Stein property. Throughout the time that Stein did not occupy the Stein property as her home, she lived within a few miles of the property and she stayed in contact with her parents and visited regularly.

Prior to 2001, when the Grabowski[s] purchased their property, it was owned by William and Martha Stevenson, Stein's

_____

2 Purely for ease of visualization, we offer the following diagram of the land in question, which is a modified version of Exhibit A to the trial court's verdict.



uncle and aunt. The Stevenson[s] had purchased the Grabowski property in 1950 and subsequently built their house. Mr. and Mrs. Stevenson are deceased but their son, Walter Stevenson, did testify regarding the recognized boundary lines prior to the Grabowski[s'] ownership of their property. . . .

On the Stein property, there is a driveway leading to Stein's residence which has existed at that location since approximately 1951. Immediately north and adjacent to . . . Stein's driveway is a slope or bank which rises northward and, levels out approximately at the top of the ostensible front yard of the Grabowski property. The east-west trajectory of the top of the slope of this bank extends from the west, at Old Washington Road in the area of Stein's mailbox, to the east where there is a stand of evergreen trees planted on Stein's side-yard (referred to as the, "bank").

Fifteen years after purchasing the Grabowski property, Richard Grabowski informed Stein that he believed he owned the disputed property described above. Richard Grabowski admitted that he did not have a survey completed prior to his purchase of the Grabowski property, which may have resolved this dispute. Stein asserts that an observed boundary line has been established by the doctrine of consentable lines, which is often referred to as the "consentable" or "observed" boundary line. The Grabowskis rely exclusively upon the deed description and surveys, but not on the conduct of the predecessors to the respective properties, and claim that a triangular section of the bank and entire front part of Stein's driveway are their property (referred to as the "disputed property").

Trial Court Opinion, 7/16/18, at unnumbered 1-4 (citations, footnotes, and unnecessary capitalization omitted).

Stein filed a complaint against the Grabowskis, seeking a declaratory judgment that she became the owner of the disputed property through the doctrine of consentable lines and stating counts sounding in quiet title and ejectment. Complaint, 8/15/16, at ¶¶ 21-31. The Grabowskis filed an answer and raised a counterclaim seeking a declaration that the boundary was that

reflected in the deeds, as well as claims of quiet title and ejectment. Answer, 9/6/16, at ¶¶ 32-49. The case proceeded to a non-jury trial on October 23, 2017, after which the parties submitted briefs. The trial court issued its verdict by order filed January 17, 2018. Therein, the court found for Stein and against the Grabowskis on the quiet title claim, declaring that Stein owned the disputed property. The court further specified a new legal description for Stein's property, provided that the legal description of Grabowskis' property must conform to that new description, instructed Stein to record the order with the department of court records, and directed Stein to pay for a survey and staking of the corners of the new boundary. Non-Jury Verdict, 1/17/18, at 2.

The Grabowskis filed a timely post-trial motion, which the trial court denied by order of March 19, 2018. Judgment was entered on the verdict on March 23, 2018, and the Grabowskis filed a timely notice of appeal from that judgment. Both the Grabowskis and the trial court complied with Pa.R.A.P. 1925, and the appeal is ripe for our disposition.

The Grabowskis state the following rather verbose claims of error, which we have reordered for ease of disposition:

A.   The Court erred, as a matter of law, in concluding that the evidence presented by Plaintiff was sufficient to establish a consentable line because Plaintiff failed to clearly establish by a fair preponderance of the evidence that she laid claim to the contested property in a manner that was "actual, visible, notorious, distinct and hostile" to the rights of the Grabowskis.

- 4 -

B.    The Court erred, by abusing its discretion, in concluding that the evidence presented by Plaintiff was sufficient to establish a consentable line claimed by Plaintiff, when the deed dated September 5, 1995 and recorded June 25, 2001 from Florence E. Dolanch, her now deceased mother, failed to include that portion of the real estate she now claims by consentable line.

C.    Stein testified that two surveys of her property done in 2003 and 2015, that were offered and admitted into evidence, and coupled with building permit applications, contained affirmations that the surveys accurately reflected the property boundaries of her property.  The aforesaid surveys were consistent with the description contained in her deed.  To ignore such testimony and sworn affidavits of Stein, which contradicts her claim of the location of the property line by recognition and acquiescence, namely a consentable line, is an error of law.

D.    The Court admitted, over the Grabowskis' objections, hearsay testimony from Stein, specifically permitting her to testify as to statements made to her by her deceased mother regarding where the property lines were located on the property.  Those statements constituted yet another basis of Stein's claim of the location of the boundary of the property by consentable line, other than as described in the deeds.  Admission of such evidence constituted an error of law, notwithstanding the statement by the Court, at trial, that it was admitted, but not for establishing the truth thereof.

E.    Establishing a binding consentable line by recognition and acquiescence requires both (i) a finding that each party claimed the land on his side of the line, and (ii) a finding that occupation has occurred for the statutory period of twenty-one years.  However, Marjorie Stein, the Plaintiff ("Stein") offered inconsistent evidence regarding the location of the boundary property line, offering at least four (4) different locations of the claimed boundary of the property.  To establish a property line other than that as set forth in the deeds, as proposed by Stein, is an error of law.

F.    Stein contends that lawn mowing activity on the Stein and Grabowski properties, in conjunction with topography,

- 5 -

creates a consentable line. Such acts, even if established, are not acts sufficient to establish an open manifestation of ownership as required to establish a consentable line under Pennsylvania law. Arbitrary lawn mowing does not rise to "notorious, distinct, and hostile" assertion of dominion over property as required to establish a contestable line in Pennsylvania and to conclude otherwise is an error of law.

Grabowskis' brief at 4-5.

We begin with a review of the applicable law:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

*Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa.Super. 2009) (quoting *Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 568 (Pa.Super. 2005)).

This Court has summarized the law regarding the doctrine of consentable boundary lines as follows:

The establishment of a boundary line by acquiescence for the statutory period of twenty-one years has long been recognized in Pennsylvania to quiet title and discourage vexatious litigation. Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other.

*Moore v. Moore*, 921 A.2d 1, 4-5 (Pa.Super. 2007) (cleaned up).  The doctrine "is a form of estoppel, whereby once a consentable line has been clearly established, the line becomes binding under application of the doctrine of estoppel after twenty-one years."  *Long Run Timber Co. v. Dep't of Conservation & Nat. Res.*, 145 A.3d 1217, 1233 (Pa.Cmwlth. 2016) (cleaned up).  "[W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies.  In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds."  *Soderberg v. Weisel*, 687 A.2d 839, 843 (Pa.Super. 1997) (citation omitted).

Two elements must be proven to establish a boundary by consentable line: "1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years."  *Moore*, *supra* at 5.  In other words, in order for a legal boundary to be established by acquiescence, "[i]t must . . . appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners."  *Plauchak v. Boling*, 653 A.2d 671, 676 (Pa.Super. 1995)  (quoting *Inn Le'Daerda, Inc. v. Davis*, 360 A.2d 209, 215-16 (Pa. Super. 1976)).  Since "the finding of a consentable line depends upon possession rather than ownership, proof of the passage of

sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor." ***Moore***, ***supra*** at 5 (cleaned up).

"'Acquiescence' in the context of a dispute over real property, 'denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user.'" ***Id***. at 5 (quoting ***Zeglin v. Gahagen***, 812 A.2d 558, 562 n.5 (Pa. 2002)). "A consentable line by recognition and acquiescence is typically established by a fence, hedgerow, tree line, or some other physical boundary by which each party abides."[3] ***Long Run Timber Co.***, ***supra*** at 1234. "However, the fence line need not be as substantial as that required for adverse possession." ***Id***.

With these principles in mind, we turn to the issues before us. In their first claim of error, the Grabowskis contend that the trial court erred in finding for Stein because the evidence did not establish that her claim to the disputed property was "'actual, visible, notorious, distinct and hostile' to the rights of the Grabowskis." Grabowskis' brief at 4. Stein argues that this issue was not raised in the Grabowskis' post-trial motion, and is therefore not preserved for our review. ***See*** Stein's brief at 18, 23. Stein further asserts that the Grabowskis' argument conflates the doctrines of adverse possession and

---

[3] ***See***, ***e.g.***, ***Zeglin***, ***supra*** (fence and row of bushes); ***Plauchak***, ***supra*** (hedge); ***Niles v. Fall Creek Hunting Club, Inc.***, 545 A.2d 926 (Pa.Super. 1988) (strand of wire along survey line); ***Inn Le'Daerda, Inc.***, ***supra*** (tree line and fence).

consentable boundary, and notes that no adverse possession theory was before the court at trial. *See id*. at 18, 21-23.

We agree with Stein on both counts. Our review of the record confirms that the issue was not included in the Grabowskis' post-trial motion, and is therefore waived. *Estate of Hicks v. Dana Companies, LLC*, 984 A.2d 943, 976 (Pa.Super. 2009) (providing issues not raised in post-trial motion are "deemed waived for purposes of appellate review"). Moreover, this claim, as presented by the Grabowskis in their statement of questions, as well as in the argument section that accompanies it,[4] is focused upon the elements of adverse possession, a separate and distinct legal theory that was not pled by Stein. *Compare Shaffer v. O'Toole*, 964 A.2d 420, 423 (Pa.Super. 2009) (stating elements of adverse possession as "actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years"); *with Zeglin*, *supra* at 561 (providing the two elements of establishing a consentable boundary are that "each party must have claimed and occupied the land on his side of the line as his own," and that "such occupation must have continued for the statutory period of twenty-one years"). *See also Plauchak*, *supra* at 675 ("[T]he doctrine of consentable

---

[4] *See* Grabowskis' brief at 4, 30-52. To the extent that the Grabowskis' argument as to this question is fairly suggested by other, preserved questions they raise concerning the adequacy of Stein's evidence to support the trial court's finding of a consentable boundary, we address it *infra* in the context of their fifth and sixth questions.

line is a separate and distinct theory from that of traditional adverse possession[.]"). For either of these reasons, the Grabowskis' first issue warrants no relief.

The Grabowskis next argue that the trial court's verdict is erroneous because the disputed property is not included in the deed by which Stein acquired her property from her mother. Grabowskis' brief at 52-56. As quoted above, the doctrine of consentable boundaries is based upon the conduct of the adjoining landowners as to land "which may not have been theirs under their deeds" and vests title accordingly, "regardless of what the deed specifies." *Moore*, *supra* at 5. Hence, the absence of the disputed land from Stein's deed does not resolve the question, and the issue merits no relief.

The Grabowskis further contend that the trial court ignored representations Stein made as to the accuracy of the deed description of the boundary in the form of property surveys and building permit applications. Grabowskis' brief at 5. The Grabowskis waived this claim of error by not raising it in their post-trial motion. *Estate of Hicks*, *supra* at 976. In any event, the trial court did not ignore the evidence, it merely did not find it persuasive in resolution of the claim. *See* Trial Court Opinion, 7/16/18, at unnumbered 11-12. As such, no relief is due.

The Grabowskis' next issue concerns the following exchange, which occurred during the cross-examination of Stein at trial concerning the survey

done at her behest in 2003 in connection with building an addition to her home.

Q    Now, when you had him do the survey, did you know where the survey lines were? Before he did that, did you know that, for example, it went across the end of the driveway?

A    No. I knew where the line was that ended at the locust trees.

Q    I'm talking about the actual property line, the survey line.

A.    I'm not a surveyor, sir. I did not know -- I had assumed that what my mother had always told me, --

Q    I'm not asking you -- you can't tell me what your mother told you.

THE COURT:    I'm going to let her finish the answer.

MR. AUDLEY:    I object to [her] telling what her mother may have told her.

THE COURT:    It's not offered for the truth. You asked her a question about the survey, and she has an understanding. I'm going to let her answer that question. I'm not taking it for the truth, of the matter. Again, I'm going to let her finish the answer on that one. You asked, did she know about the survey, and she's going to explain what she knew. I'll let her do that.

A    When Larry Elliott did the survey, he did, not do it himself. He had two men who did it for him. When he gave it to me, I was stunned to see that there was a line going, across my driveway because my mother had always told me and we sat out, on our front porch for months and months and months, if you ever added them up, and one of the conversations we always had was where does the -- where do you cut? Do you cut all the way down there? Is the end of the property at the end of the locust trees on the bank? And mother would say, yes, that's exactly where-that is.

> Especially important, after 1995 because I really needed to know where they were, and nobody had ever done a survey since they first put in the house in 1951.

N.T. Trial, 9/7-8/17, at 115-16.

The Grabowskis argue that Stein's testimony concerning statements her mother made about the location of the boundary lines was offered for the truth of the matter asserted and, therefore, was inadmissible under the rule against hearsay. Grabowskis' brief at 70-74. The trial court addressed the Grabowskis' argument as follows.

> In response to a question on cross examination regarding her understanding as to the location of the boundary line the court admitted Stein's testimony that her understanding was derived from what her mother had always told her about the location of the boundary line over the objection of Grabowski. This court ruled that it was not being offered for the truth of the matter asserted and further, it was offered in response to defense counsel's cross examination question about the survey and her understanding about the boundary line and why she believed the survey to be incorrect. This admission was not a deciding factor in the court's finding of a consentable line in favor of Stein and was not considered for the truth of the matter asserted.

Trial Court Opinion, 7/16/18, at unnumbered 12 (unnecessary capitalization omitted).

Our review of the record and the trial court's explanation of its ruling reveal no abuse of discretion or reversible error. From the full exchange, it is clear that Stein's testimony was not offered to show that the survey line was where her mother said it was. Indeed, Stein acknowledged throughout the trial that her understanding of the boundary was not consistent with that described by the deed, and, hence, her mother's statements were not true.

- 12 -

Rather, the statements were offered to establish the basis of Stein's assumption as to the location of the line. Statements offered to show the effect on the listener or explain a course of conduct are not hearsay. ***See***, ***e.g.***, ***S.W. v. S.F.***, 196 A.3d 224, 232 (Pa.Super. 2018) (course of conduct); ***Schmalz v. Manufacturers & Traders Tr. Co.***, 67 A.3d 800, 803 n.3 (Pa.Super. 2013) (effect upon listener). Accordingly, the admission of the testimony establishes no basis for relief.

With their final claims, the Grabowskis assert that Stein failed to establish that she had acquired title to the disputed property through the doctrine of consentable lines. Specifically, they contend that there was no evidence of any formal agreement or discussions between the adjoining landowners concerning a new boundary. Grabowskis' brief at 41-42. The Grabowskis maintain that, other than the obvious encroachment by the driveway, the evidence showed no consistently-recognized line "demarcated by blatant physical barriers such as fences or hedges" to warrant establishment of a boundary other than that provided in the deeds. *Id*. at 37, 59. The Grabowskis further argue that Stein's evidence concerning the placement of her mailbox, mowing of the lawn, and tree lines did not adequately manifest ownership of the disputed area. *Id*. at 39-52, 59-62.

The trial court offered the following evaluation of the testimony in explaining its conclusion that Stein acquired title to the disputed property by the doctrine of consentable lines.

The evidence is clear that the prior owners of the two adjacent properties (the Stevensons and Dolanchs) had observed a consentable boundary that deviated from their deed descriptions and surveys for approximately fifty (50) years prior to [when] the Grabowskis purchased their property from the Stevensons in 2001.

Stein presented clear and convincing evidence that her parents constructed a house and installed a driveway in 1951 which encroached the boundary line found in the deed descriptions and later surveys. Beyond the driveway, the court finds the placement of the Dolanchs' mailbox on the disputed strip of property in 1962 as further evidence of their control and the Stevensons['] acquiescence to the consentable boundary line.

The court also found sufficient evidence that when the Dolanchs installed their driveway they also took control and maintained the strip of land that abutted their driveway which ran from Old Washington Road up the hill to a stand of pine trees that they had planted. This maintenance included mowing the disputed property, applying fertilizer to the grass, as well as raking the leaves.

Stein testified that her brother and her father began mowing the bank in approximately 1953, and that they stopped mowing "where the bank came up and leveled off:" Stein testified that multiple other people, either in her family or engaged by her family, mowed the bank since that time and up to the present day for 64 years. There is no contradictory evidence that from 1953 through 2001 both sets of property owners consistently recognized and observed mowing [to] the line at the top of the bank.

Walter Stevenson's testimony further supported Stein's assertion that the disputed property belonged to her and that the consentable line was recognized and acquiesced to by the Stevenson[s]. His testimony showed that he mowed the level portion of the lawn of the Grabowski Property beginning in 1954 but that he did not, nor ever had mowed the bank. The bank was never mowed or maintained in any way by or on behalf of the Stevenson[s] for about 46 or 47 years. Stevenson testified that the Dolanchs, Stein's parents, mowed and maintained the bank from approximately 1953 onward.

- 14 -

Scott Grabowski did testify that when the Stein house was unoccupied they hired someone from Peters Township Public Works to come intermittently to cut the grass. During this time period, Scott Grabowski mowed a portion of the bank south of the top of the slope in 2001, but he did so because, in his opinion, the lawn was not being maintained (evidencing his presumption that it should be maintained by the Steins), and he mowed the bank because he "did not want to look at it." Once Stein resumed her occupancy of the residence in 2003, her husband resumed mowing the bank and has continued to do so ever since. <u>Scott Grabowskis [*sic*] has never maintained the bank at any other time.</u>

Beyond the maintenance of the bank, this court found significant uncontroverted evidence, that when both properties where transferred in 1951, a stand of locust trees ran along Washington Road fronting both properties. The locust trees were subsequently removed from the Stein property as well as trees on the Stevenson property at about the same time that the Stein driveway was installed, in approximately 1951. The removal of the trees on the Grabowski property by the Dolanchs created a clear view of Washington Road for vehicles exiting the Stein driveway.

As a result of the removal of the locust trees by the Dolanchs on the Grabowski property, and the continued control of that area by the Steins, the end of this stand of locust trees running along Old Washington Road at the front of the Grabowski Property and ending at the top of the slope of the bank and the Stein's mailbox delineated the observed boundary. A photograph was admitted from 1967 which shows the end of the cluster of locust trees and shrubbery in the same location 'as another photograph from 1997. Another photograph which is approximately from 1960 or 1961 shows the same location of these trees and shrubs ending at the observed boundary line.

. . . .

Lastly, the Court gave significant weight to the conduct of Scott Grabowski during the relevant period. As the occupant of the Grabowski property, Scott Grabowski maintained the lawn north of the consentable line. In approximately 2004 or 2005, he removed the locust trees and shrubs along Old Washington Road. He also "leveled out," or reduced the slope along Old Washington Road, the area where he removed the locust trees on the

- 15 -

Grabowski Property. He did so to make his lawn easier to mow with his riding mower; however in doing so, he did not go beyond the top of the slope of the bank with his grading or in doing any lawn maintenance. In doing so, Scott Grabowski supported the idea that the consentable line had been established by the conduct of the predecessors in title.

In all, this court finds that there was clear and convincing evidence to show that a consentable boundary line had been recognized and acquiesced to for approximately 50 years; significantly more than the requisite amount of time under the law. Stein provided evidence to show that both [she and her predecessors], as well as the predecessors in title to the Grabowski[s'] property, recognized the disputed property belonged to her. Stein's testimony showed that she and her family had always maintained the bank. William Stevenson testified that during the relevant period from approximately 1951 until 2001, his family had never mowed or maintained the bank in anyway. Even after the Grabowskis purchased their property in 2001, the conduct of both the Grabowskis and Steins recognized the disputed property belonged to Stein. As such, this court f[ou]nd that [Stein] ha[d] provided enough evidence to show a consentable line was established which deviated from the surveys and deed descriptions.

. . . .

The court correctly concluded, as a matter of law, [that] the pine trees at the top of the hill and the mailbox at the bottom established the consentable boundary line that the adjacent landowner[s] recognized and acquiesced to for 50 plus years by maintaining their property up to that line.

Trial Court Opinion, 7/16/18, at unnumbered 6-10, 12 (citations and unnecessary capitalization omitted; emphasis in original).

Our review of the record reveals that the trial court's findings and conclusions are supported and legally correct in all respects but for the location of the consented-to line. Again, for the sole purpose of ease of our discussion

- 16 -

of our ruling, and not to establish any property rights, we offer the following

diagram of the relevant portion of the property.[5]



The trial transcript shows that Stein offered testimony, credited by the

trial court,[6] that both adjoining landowners had treated the crest of the slope

or bank north of Stein's driveway (represented in the diagram by the dashed

line) as the line separating their properties for half a century before the

Grabowskis purchased the land, despite the fact that the deeds established a

different line.  Walter Stevenson testified that from 1952 to 2001, he mowed

the property that is now the Grabowski property up to a line of locust trees at

the top of the bank, but never mowed the slope although he knew that the

property line was at the bottom of the slope.  N.T. Trial, 9/7-8/17, at 28-29,

---

[5] Stein's surveyor witness testified that the mow line coincides with the top of
the bank, and is represented by the dashed line in the diagram.  **See** N.T.
Trial, 9/7-8/17, at 161-62.

[6] As the Grabowskis acknowledged during their opening statement, "at the
end of the testimony it's going to be a question of [the trial court] judging the
credibility of [Stein's] witnesses."  N.T. Trial, 9/7-8/17, at 14.  This Court is
bound by the trial court's credibility determinations.

43. Rather, the Dolanchs (Stein's father and brother) mowed the bank in addition to the property specified in the deed. *Id*. at 29. Stein confirmed the mowing history, and testified to other activities she and her family conducted on the land between the boundary specified by the deed and the line of locust trees at the top of the slope, including application of lawn treatments (resulting in the lawn being a different color from that of the Grabowskis' lawn), removing and planting trees, and raking leaves. *Id*. at 55-58, 62-63, 77.

Furthermore, the Grabowskis' son Scott, who has been the only occupant of their property since they purchased it, continued this treatment of the top of the slope as the boundary of the property by mowing to that line and no farther, except when the Stein property was unoccupied and he found the lack of lawn maintenance unsightly. *Id*. at 133, 187, 197. Indeed, when grading the southwestern portion of the Grabowskis' property and clearing leaves and other debris from the Stein's trees that had collected on the Grabowskis' property, Scott Grabowski went to the crest of the slope and stopped, rather than continuing to the line indicated by the deeds. *Id*. at 88, 184.

We might agree with the Grabowskis that the above evidence would be insufficient to establish a consentable boundary if it merely showed that Stein and her predecessors treated the disputed property as their own, without any sign that the she and her predecessors, along with the Grabowskis'

predecessors, recognized and consented to a particular line as a boundary line. ***See Plauchak***, ***supra*** at 676 ("It must . . . appear that for the requisite twenty-one years **a line was recognized** and acquiesced in as a boundary by adjoining landowners.") (citation omitted; emphasis added). However, the evidence discussed above fully supports the trial court's finding that, for more than twenty-one years, both Stein and/or her predecessors and the Grabowskis' predecessors recognized and acquiesced to an obvious physical demarcation on the land as the boundary between their respective land: namely, the top of the slope north of Stein's driveway.[7]

To the extent the Grabowskis argue that the evidence was not consistent as to the location of the observed boundary, we disagree. The evidence from multiple sources pointed to the top of the bank as the boundary that was recognized by the adjoining landowners for far more than twenty-one years. Further, the Dolanchs and Stein continuously occupied the land up to the crest of the bank during that time, and the Stevensons and Grabowskis passively acquiesced to that line. Hence, the trial court did not err in concluding that Stein proved both elements of her consentable-line claim. ***See***, ***e.g.***, ***Moore***, ***supra*** at 5.

---

[7] Stein's surveyor witness testified that the bank of the disputed property is of a "substantially different grade than the balance of the Grabowskis' property." N.T. Trial, 9/7-8/17, at 153.

However, there is an inconsistency between the trial evidence and the boundary adopted by the trial court in its verdict. Although, as discussed above, the consent line was established to be at the crest of the slope, the trial court instead accepted Stein's proposed property line and set it as the new boundary for purposes of the parties' recording of new deeds and having a surveyor placing monuments on the land to reflect the new legal descriptions. The line established by the trial court was created by Stein's surveyor by making "a simple a straight line as [he] could that encompassed or tried to traverse the top of the slope and terminate[d] at the Steins' mailbox on Old Washington Road." N.T. Trial, 9/7-8/17, at 148.

From the survey, it appears that this line awards to Stein a significantly greater amount of land than she is entitled to receive. The doctrine of consentable lines allows a successful plaintiff to obtain title only to the land on her side of the consent line and no more. *See Soderberg*, *supra* at 843 ("[W]hen a consentable line is established, **the land behind such a line** becomes the property of each neighbor regardless of what the deed specifies." (emphasis added).

Accordingly, while we affirm the trial court's verdict to the extent that it found in favor of Stein and against the Grabowskis, we vacate the judgment and that portion of the verdict that established Stein's proposed boundary line rather than the proven consent line at the top of the bank as the new

boundary. We remand the case for the trial court to enter a new verdict incorporating the correct property line.[8]

Judgment vacated. Verdict affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Shogan joins the memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/12/2019

---

[8] We leave to the trial court's discretion the decision whether an additional hearing is necessary to aid its crafting of a new verdict and/or exhibits thereto.